## Wendt v. Berry, Trustee.

(Decided June 20, 1913).

### Appeal from Campbell Circuit Court.

1. Officers—Powers of De Facto Officers Acting Under Unconstitutional Act.—State, county, district or municipal officers acting under authority of a legislative act are de facto officers, although the act may be declared unconstitutional and all acts done by such officers before the legislation creating the office has been declared invalid, are binding upon the public and third persons.

2. Officers—Powers of De Facto Officers of Municipal Corporations.— Where a city was created by an act of the Legislature, and a city government organized under the act, and contracts for street improvements made conformable to the general laws governing

such a city, the contractor who made the improvements may enforce his claim against the property owner and the property as fully as if the act creating the city was valid, although subsequent to the making of the improvement but before they were paid for the act creating the city was held to be unconstitutional.

3. Officers—De Facto Officers Defined.—A de facto officer is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons, where the duties of the office are exercised, first, without a known appointment or election, but under such circumstances of reputation or acquiescence as are calculated to induce people without inquiry to submit to or invoke his action, supposing him to be the officer he assumed to be; second, under color of an election or an appointment by or pursuant to an unconstitutional law before the same is adjudged to be such.

WM. U. WARREN for appellant.

BAILEY & VEITH BRENT SPENCE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In 1888 the Legislature of the State created the District of Clifton in Campbell County and established therein a form of municipal government very similar to the form of government of the cities of the state, although the district was not in fact either a city or a town. The district thus established and governed continued in existence until 1910 when by an Act of the Legislature it was converted into a city of the fifth class under the name of the city of Clifton. After the enactment of this legislation, a city government was duly and regularly organized and the affairs of the city administered in conformity to the laws governing cities of the fifth class, and this government was continued until 1912, when the Act of the Legislature converting the district of Clifton into a city of the fifth class was held unconstitutional by this court in Hurley v. Motz, 151 Ky., 451. Shortly after the opinion in this case was handed down, the government of the district of Clifton was reestablished and the affairs of the district have since been administered as they were before the district was converted into a city.

Some time after the establishment of the city government pursuant to the legislative act of 1910, certain original street construction was ordered to be made by the city council and completed in the manner provided in the laws governing fifth class cities; but before the coun-

cil had opportunity to accept the work, the act establishing the city had been declared invalid. When the district of Clifton was re-established, the appellant contractor, who did some of the work of construction, applied to the governing authorities of the district to accept and approve it, and the work was accepted and approved in the manner pointed out in the act creating the district, and thereupon he brought this suit to enforce a lien for the cost of the construction on property owned by the appellee. A general demurrer was sustained to the petition of the contractor as amended, and, declining to plead further, the suit was dismissed and this appeal prosecuted.

The appellee resists the enforcement of a lien upon his property and the recovery of the amount due for the construction, upon the single ground that all of the ordinances and contracts in relation thereto, made and entered into by the governing authorities of the city of Clifton, were without force or effect because the act under which the city was set up was void from the beginning and therefore all ordinances, contracts and other things made and done by the persons exercising the powers of officers of the city during the time the city government was administered under the legislative Act were a nullity and did not confer any right or create any liability.

In opposition to this view, it is urged on behalf of the appellant contractor that the persons who composed the municipal government of the city of Clifton, while it was assuming to be a city of the fifth class, were *de facto* officers, and the appellee, who received the benefit of contracts made by these *de facto* officers, should not be allowed to escape the payment of the sum due for the improvements with which his property is charged.

Putting aside the argument that the improvements with which appellee's property is charged were made with his consent and by his request, and he is therefore estopped to deny his liability, and the further argument that, as the improvements made during the supposed existence of the city government were adopted by the district government after its re-establishment, this adoption and acceptance had the same effect as if the improvements had been ordered by the district government and had been completed and accepted under its management, it will be seen that the issue in the case, although an important one, may be put in few words and thus stated:

Where a city government is organized under an unconstitutional act, can persons, who, during the existence of the city government so organized, received benefits therefrom, defeat the payment of the amount due the contractor for the benefits upon the sole ground that the city government was a void thing from the beginning, and the persons acting as its officers were without authority to create any enforceable demands growing out of contracts entered into by and with them at a time when the officers of the city, the contractor and the property owners believed that the city government was a legal municipal organization?

There is much conflict in the cases in which this question has been considered, some of the courts holding that there cannot be a *de facto* officer unless there is a *de jure* office, and so where officers are exercising authority under an unconstitutional act, everything they do in exercising the functions of the offices they hold is void, as an unconstitutional law is no law and furnishes no authority to persons assuming to perform duties under it; while there is another line of cases holding that, although an act of the Legislature may be declared unconstitutional, the acts of officers who assume to exercise authority under it are binding upon the public and third parties until the legislation has been declared invalid. One of the leading cases on this subject is Hildreth v. McIntire, 1 J. J. Mar., 206, In that case there was involved a question growing out of the conflict between a court of appeals organized under and in conformity to the Constitution of the State and a court of appeals created by an act of the Legislature of the State, which body having become offended at some decisions of the constitutional court, undertook to abolish it and set up in its place a legislative court. In holding that this legislative court was not a *de facto* body or entitled to exercise any of the functions of a judicial tribunal, the court rested its decision distinctly upon the ground that there could not be a *de facto* judicial tribunal, exercising power and authority at the time the office it assumed to discharge the duties of was filled by constitutionaly appointed judges, saying:

"But when the Constitution, or form of government, remains unaltered and supreme, there can be no *de facto* department, or *de facto* office. The acts of the incumbents of such department, or office, can not be enforced conformably to the Constitution, and can be re-

garded as valid, only when the government is over-turned. When there is a constitutional executive and Legislature, there cannot be any other than a constitutional judiciary. Without a total revolution, there can be no such political solecism in Kentucky, as a '*de facto*' court of appeals. There can be no such court, whilst the Constitution has life and power. There has been none such.

"There might be under our Constitution, and there have been '*de facto*' officers. But there never was and never can be, under the present constitution, a '*de facto*' office.

"The gentlemen who directed the appeal in this case to be dismissed, and the one who certified the order, did not hold office in the court of appeals. The Legislature had attempted to abolish the court of appeals, ordained and established by the Constitution, and create, in its stead, a new court. This attempt was ineffectual for want of legislative power. The offices attempted to be created, never had a constitutional existence; and those who claimed to hold them, had no rightful or legal power. They were not appointed to the court of appeals, fixed by the Constitution. They did not claim to exercise the functions of this court. Their tribunal claimed to derive its origin from the fiat of the Legislature. The Court of Appeals, had not been, and could not be abolished. Its judges had not been removed from office, and were acting and ready to continue acting as judges. The act of the Legislature did not intend to superadd four judges to the number already in office in the court of appeals. It can not receive, and never has received such a construction.

"The gentlemen who acted as judges of the legislative tribunal, did not claim to be, and certainly were not associates of the judges of the constitutional court. They were not their successors. They were not the incumbents or *de jure* or *de facto* officers. Nor were they *de facto* officers of *de jure* offices. For if such a thing could be, as a *de facto* judge of the Court of appeals, of the Constitution, these gentlemen did not hold any such place, for the reasons before assigned. They had no official rights or powers."

In Nagel v. Bosworth, Auditor, 148 Ky., 807, the question was presented as to the validity of the acts of John T. Hodge while he was acting as judge of the Campbell Circuit Court under an act of the Legislature that

was subsequently declared unconstitutional. In holding that Judge Hodge was a *de facto* officer, and his judicial acts before the statute under which he was exercising the functions of the office was adjudged unconstitutional, were valid, the court distinguished the case of Hildreth v. McIntire, saying:

"In that case the Legislature undertook, by statute, to abolish the Court of Appeals established by the Constitution and to create another Court of Appeals, in lieu of it. The act, on its face, was a palpable violation of the Constitution, as the Legislature was without power to create a Court of Appeals; but not so is the act here. The Legislature has power to create a circuit court, and, under certain conditions, to add an additional judge. The act that it passed showed that the conditions existed which warranted it to create an additional judge. The act, on its face, was within the power of the Legislature, and upon considerations of sound public policy, litigants who have tried their cases before Judge Hodge should not be sufferers by reason of the unconstitutionality of the statute."

Although on a casual inspection there would appear to be no substantial difference in the facts of these two cases, a careful examination will disclose that there is a marked distinction between them, and that each case rests on different, but sound principles. In the Hildreth case the court ruled that there could not be *de facto* judges of the Court of Appeals of Kentucky assuming to act under a void legislative act at a time when legally selected judges were exercising the duty and were holding the office of judges of the court. The fact that other legally elected officers were in existence when the usurpers undertook to perform the duties of the office was the turning point in this case and it was this condition that influenced the court in holding that the acts of the usurpers were void. But in the Nagel case there was no judge claiming the office or exercising the functions of the office that Hodge had been inducted into under the void legislative act. There was no doubt of his right to the office if the act creating it was valid. Under these circumstances we held that he was a *de facto* officer. The same conclusion was reached by the Connecticut court in Brown v. O'Connell, 36 Conn., 432, 4 Am. Rep., 89, where the court said in substance that a judicial officer appointed pursuant to an act of the Legislature afterwards declared unconstitutional, was

a *de facto* officer, and his acts while exercising the duties of the office were binding upon the public and third persons.

In Riley v. Garfield Township, 58 Kansas, 299, the court also adopted the view that the acts of public officers while they were performing the duties of the office were valid, although the law creating the office was afterwards declared unconstitutional.

In Burt v. Winona & St. Peter Railroad Company, the Minnesota court in 31 Minn., page 472, said "that where a court or office had been established by an act of the Legislature apparently valid, and the court had gone into operation, or the office is filled and exercised under such act, it is to be regarded as a de facto court or office—in other words, that the people shall not be made to suffer because misled by the apparent legality of such public institutions."

In Cooley's Constitutional Limitations, page 750, it is said, after defining a *de facto* officer that "for the sake of order and regularity, and to prevent confusion in the conduct of public business and insecurity of private rights, the acts of officers *de facto* are not suffered to be questioned because of the want of legal authority, except by some direct proceeding instituted for the purpose by the State or by some one claiming the office *de jure* or except when the person himself attempts to build up some right or claim, some privilege or emolument, by reason of being the officer which he claims to be. In all cases the acts of an officer *de facto* are as valid and effectual while he is suffered to retain the office as though he was an officer by right, and the same legal consequences will follow from them for the protection of the public and of third parties."

In Thompson v. Couch, 144 Mich., 671, the court said: "It is contended, however, that there cannot be a *de facto* officer of an office which has no existence, and that if the amendatory act is unconstitutional the respondent cannot be held to be a *de facto* incumbent of an existing office. There are cases which hold that, as an unconstitutional statute is not law, such statute creating an office does not give color of right to an incumbent. But where this is held, the holding is said not to be inconsistent with the rule that one chosen under color of an election, or appointment by or pursuant to a public unconstitutional law before the same is adjudged to be so, is an officer *de facto*. While there can be no such thing as a

*de facto* office, there may be a *de facto* officer, whose apparent right arises out of action taken by the electorate or the appointing power under the supposed authority of an unconstitutional law before the same is declared unconstitutional."

In Speer v. Board of County Commissioners, 88 Fed., 749, the court, in holding that the acts of public officers, exercising authority under a statute afterwards declared invalid, were binding upon the public and third parties, said: "Until the judiciary has declared it void, men act and contract, and they ought to act and contract, on the presumption that it is valid; and where, before such a declaration is made, their acts and contracts have affected public interests or private rights, they must be treated as valid and lawful. The acts of a *de facto* corporation or officer under an unconstitutional law before its invalidity is challenged in or declared by the judicial department of the government cannot be avoided, as against the interests of the public or of third parties who have acted or invested in good faith in reliance upon their validity, by any *ex post facto* declaration or decision that the law under which they acted was void."

In Commonwealth v. McCombs, 56 Pa. St., 436, the Pennsylvania court said: "An Act of assembly, even if it be unconstitutional, is sufficient to give color of title, and an officer acting under it is an officer *de facto.*" To the same effect is Ashley v. Board of Supervisors, 60 Fed., 55.

In Lang v. Bayonne, 74 N. J. L., 455, also reported in 15 L. R. A. (n. s.,) 93 and 12 A. & E. Ann. Cases, 961, the court, after reviewing a number of authorities, said "that an officer appointed under authority of a statute to fill an office created by the statute is at least a *de facto* officer and that acts done by him antecedent to a judicial declaration that the statute is unconstitutional and void, are valid so far as they involve the interests of the public and third persons." In the full notes to this case in the L. R. A. and A. & E. Ann. Cases there will be found a review of all the cases bearing upon this question.

The leading case upon the other side of this question is Norton v. Shelby County, 118 U. S., 425, 30 L. Ed., 178. In that case the Supreme Court said: "An unconstitutional act is not a law. It confers no rights; it imposes no duties; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed;" and laid down the doctrine that the acts of

public officers exercising authority under an unconstitutional law were not binding upon the public or any one else. This case, although having great weight on account of the distinguished judge who wrote it and the court for whom he spoke, has not been followed at all by a number of state courts, or in its entirety by even the Federal courts, as may be seen by an examination of the Federal case, *supra*, in which this case was distinguished upon rather narrow grounds, leaving the impression that the court drawing the distinction was not disposed to fully adopt the broad doctrine announced in the Norton case, that an unconstitutional act conferred no rights and created no liabilities, and nothing done under it was binding upon any person.

In Norton v. Shelby County, the Supreme Court adopted as sound the definitions of a *de facto* officer laid down as follows in State v. Carroll, 38 Conn., 449: "An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon the principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office are exercised:

"First. Without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be.

"Second. Under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like.

"Third. Under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being known to the public.

"Fourth. Under color of an election or an appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such."

These definitions appear to us to be exceptionally well stated, and to cover fully every state of case in which the authority of a *de facto* officer may be exercised. The facts of the case we have, bring it easily within both the first and fourth of the definitions given. Here the municipal government of the city of Clifton was

organized pursuant to an act of the Legislature of the State that conferred upon the officers all the powers they assumed to exercise and gave them the right to create the liabilities they did create in the construction of street improvements and to impose upon the property holders the burden they did impose arising out of these improvements. At the time these improvements were made, and at all times from the establishment of the city under the legislative act, until the act was held unconstitutional, the persons exercising the powers of officers of the municipality, the people of the city, the property owners and contractors, and the public generally, believed, and had a right to believe, that the organization of the city was legal. Acting under this assumption, indulged in by every person in any manner connected with the administration of the affairs of the city either in an official or private capacity, the city authorities discharged without question or protest all of the duties belonging to their respective offices. Under these circumstances it would not only be a manifest injustice but a positive wrong to deny to the acts of these officers the validity to which acts of legally elected officers are entitled.

As the principles upon which the validity of the acts of *de facto* officers rest are not defined by either Constitution or statute, and the courts are free, except as they may feel bound by precedent, to adopt such views as will best subserve the ends of justice, it would be a signal and unfortunate demonstration of the inability of the courts, when unrestrained by legislative enactment or judicial precedent, to administer the law according to the rights of the case if the appellant contractor should be denied the relief sought. To say that the property owner should be allowed to receive and retain substantial and permanent benefits to his property without compensating the contractor whose labor furnished the benefits, and to turn the contractor out of court empty handed, would be a departure from the principles that have at all times controlled this court in the decisions of cases where it was free to exercise its discretion.

Acts of the Legislature are presumed to be valid until declared void by the courts. The people generally and rightfully so regard them. The power and authority of public officers who exercise the duties of office under legislative enactments is recognized by all persons with whom they have dealings in their official capa-

·city, and the public good imperatively demands that validity should be given to the acts of these officers when they are performing duties within the scope of their public authority. If individuals dealing with public officers might in every instance question their authority or deny their right to exercise the office until the courts of last resort had given the sanction of their approval to the validity of the legislation under which the office was established, the conduct of public affairs would be involved in interminable confusion and doubt. No person would feel secure either in his personal or his private rights. Confusion and uncertainty would attend every official act that was performed. Such a condition as this would be disastrous to the peace and welfare of society. It would encourage the lawless to persist in their offenses and make difficult the just enforcement of the law, as persons charged with this duty and willing to exercise it, would always be apprehensive of their right to do so.

Therefore, as the precise question here involved is a new one in this State, we feel at liberty to announce the rule, sound in principle, and supported by abundant authority, that the acts of public officers, whether they be state, county, district or municipal, created by an act of the Legislature, are valid as to the public and all persons having dealings with the officers antecedent to the time when the legislative act under which they were exercising authority was declared unconstitutional.

Wherefore, the judgment is reversed, with directions to enter a judgment in conformity with this opinion.