## Gray v. McAtee et al.

(Decided December 20, 1929.)

C. W. WELLS for appellant.

LOUIS I. IGLEHEART for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Appellant, Orville Gray, who was the plaintiff below, brought this action against the appellees, James A. McAtee, James Walker, T. M. Maple, R. P. Thornberry, and the Fidelity & Casualty Company of New York, for damages for false imprisonment and malicious prosecution. The trial in the lower court resulted in a verdict for the defendants, and from the judgment entered thereon the plaintiff has appealed.

The appellee R. P. Thornberry was at the time the alleged cause of action arose, chief of police of the city of Owensboro, and James A. McAtee, James Walker, and T. M. Maple were police officers of that city. The appellee the Fidelity & Casualty Company of New York was surety on the official bond of each of these officers.

The S. W. Anderson Department Store, which is located in the business section of Owensboro, was broken into and robbed on Christmas night in the year 1926. The wholesale grocery store of the Parsons & Scoville Company was broken into and robbed on the same night. In the early morning hours of December 26, 1926, it was discovered that the Anderson Department Store had been broken into and the appellees McAtee and Walker were detailed to make an investigation. These officers entered the store and found scattered through the store a

lot of old clothing consisting of overalls, cap, gloves, sweater, and other articles. It was apparent that the robbers had procured new clothing from the merchanise in the store and had left their old clothing. The officers took the old clothing to the police station. In a pocket of the overalls they found a receipt with the name of T. L. Duke thereto, signed by Orville Gray. Duke was located and brought to the police station. He disclaimed any knowledge of the circumstances except that he had given to Orville Gray a basket of apples for delivery to the express office for shipment to a point in Tennessee. The receipt was for this basket of apples. Both Gray and Duke were employees of the Parsons & Scoville Company. McAtee and Walker, accompanied by Duke, left the police station to locate Gray. They found him at his home; he and his family occupied a room in an apartment house. The outside door of the apartment house opened into a hall, and on one side of the hall was the room occupied by Gray, and on the opposite side was the room occupied by Mrs. Daisy Bolton. When the officers arrived at the apartment house they were admitted by Mrs. Bolton, and when they informed her that they desired to see Orville Gray she knocked on the door to Gray's bedroom, and opened the door. The officers walked in the room and found Gray in bed. Gray's brother-in-law, Gip T. Wells, was also in the room in bed. They requested Gray and Wells to accompany them to the police station for the purpose of examining the articles found in the S. W. Anderson Department Store and giving them any information in their possession in regard thereto. Gray and Wells went to the police station with the officers, and after Gray had examined the articles he admitted that the gloves found in the S. W. Anderson Department Store belonged to him and that the receipt found in the overalls had been signed by him. He did not admit that the overalls belonged to him, but said they were similar to overalls worn by him and other employees of the Parsons & Scoville Company. At that time it had not been discovered that the store of the Parsons & Scoville Company had been broken into, and some one suggested that an investigation should be made. McAtee, Walker, and Duke then went to the wholesale grocery store of the Parsons & Scoville Company and ascertained that it had been broken into. It had snowed the night before, and the tracks in the snow, near the

point where the store had been entered, indicated that two persons had participated in the robbery. Walker and McAtee then returned to the police station, and Gray and Wells permitted them to take their shoes for the purpose of ascertaining whether or not they would fit into the tracks in the snow. The tracks made by one of the supposed robbers were larger than those made by the other. McAtee and Walker were of the opinion that Gray's shoes fitted perfectly in the larger tracks and that Wells' shoes fitted in the smaller tracks. B. F. Siler, manager of Parsons & Scoville Company, was present when the shoes were fitted into the tracks, and he was not convinced that the shoes fitted perfectly in the tracks. McAtee and Walker returned to the police station and reported the facts in the case to R. P. Thornberry, the chief of police, who had just arrived. He directed them to go before the city prosecuting attorney and relate to him the facts and obtain his advice as to whether or not the facts constituted probable cause for issuing a warrant of arrest for Orville Gray.

After hearing the statement of the facts, the prosecuting attorney advised them that the facts were sufficient to constitute probable cause for the arrest of Gray and prepared a warrant for his arrest charging him with the crime of housebreaking. McAtee then went before R. E. Watkins, judge of the police court, and made oath to the affidavit for the warrant, and the police judge issued the warrant. McAtee then took the warrant to the police station and delivered it to the appellee T. M. Maple, who read the warrant to Gray and placed him under arrest. Gray was placed in the city jail and remained there until his examining trial was held on the following day, when he was dismissed because of insufficient evidence to hold him over to the grand jury.

It was later ascertained that a negro had broken into the Parsons & Scoville store and stolen the articles of clothing found in the Anderson department store, where he had left them when he later broke into that store. The clothing of Gray, and other employees of the Parsons & Scoville Company, stolen by the negro, was clothing worn by them during working hours and left in the store during the night.

The petition as amended sets out several causes of action. It alleged in substance that the defendants McAtee and Walker wrongfully and without right and

without. any invitation and by force entered the plaintiff's residence and demanded and required that he accompany them to the police station, and that they did conduct him from his residence through the streets of Owensboro to the police station, and that they, assisted by defendants Maple and Thornberry, continued to hold him in custody, and after the warrant was read to him he was not taken before any judge or magistrate and was not given an opportunity to execute bond; that the place where he was incarcerated was not the county jail; that he was therefore unlawfully confined, whether or not he was properly under arrest. And finally it was alleged that McAtee and Walker had no reasonable grounds for believing the plaintiff had committed the offense of housebreaking at the time they procured the issual of the warrant and that they acted maliciously.

It is insisted that the trial court erred in refusing to instruct the jury on the question of trespass; that is, whether or not the appellees McAtee and Walker wrongfully and forcibly entered appellant's home.

The court instructed the jury to find for the appellant if they should believe from the evidence that J. A. McAtee and James Walker, or either of them, wrongfully or without having any reasonable grounds to believe plaintiff had committed a felony, arrested plaintiff and took him to the police station and deprived him of his liberty for any time prior to the service of the warrant.

There was no evidence to authorize the submission of the question of trespass. The evidence discloses that when Mrs. Bolton knocked on the door of the appellant's bedroom and informed Mrs. Gray that the men present desired to see appellant, they walked into the room and requested Gray to go with them to the police station for the purpose of examining the articles that had been found in the Anderson Department Store and giving them such information concerning these articles as they might have. Appellant made no objection to their entering the room nor to accompanying them to the police station. He consented to accompany them and give them such information as he might have, as it was his duty to do.

The lower court refused to instruct the jury that the confinement of the appellant in the city jail, instead of the county jail, constituted false imprisonment, and of this he complains. The city jail is a public prison. While appellant was charged with a felony, he was arrested

under a warrant issued by the police judge of the city and his examining trial was held before the police judge. We know of no statute or rule of common law that forbids the incarceration in a city jail of persons charged with felonies. In Horsfall v. Commonwealth, 1 Bush, 103, it was held that a state prisoner may be committed to a city jail, and if so his custodian will be the city jailer, and the county jailer will neither have control over him nor be responsible for his safe-keeping. Section 55 of the Criminal Code, which provides that a defendant during the periods of adjournment of the examination if he fail to give bail shall, during such adjournment, be confined in the county jail, was not in force when the Horsfall opinion was rendered, but that section has no application where an examination has not been held or adjourned, and it does not prevent the incarceration of a defendant in a city prison during the interim between his arrest and examination where he has been arrested by city officers under a warrant issued by the police judge of the city, even though, as argued by appellant, the statute is mandatory and requires that the defendant be imprisoned in the county jail after the examination has been held or adjourned.

The lower court refused to submit to the jury the question of probable cause for procuring the warrant of arrest for the appellant, and it is urged that this was error. It is insisted for appellant that appellees McAtee and Walker failed to make a full and fair statement to the city attorney of all the facts in their possession at the time, and that therefore the court erred in refusing to give an instruction on malicious prosecution. While the attorney, whose advice appellees sought, is not entirely clear in his testimony as to just what facts were related to him, it is clear that all the substantial facts then in possession of the appellees were related to him, and it was upon these that he based his opinion and advice. We are satisfied that McAtee and Walker fully and fairly disclosed to the attorney all the material facts then in their possession or which they could have ascertained by reasonable inquiry, and it follows that the court properly refused to give an instruction on this phase of the case. Cincinnati, N. O. & T. P. Ry. Co. v. Bedow, 189 Ky. 140, 224 S. W. 674; J. B. Colt Co. v. Grubbs, 206 Ky. 809, 268 S. W. 817.

A careful reading of the record convinces us that the officers were diligent in their investigation of the crime that had been committed and were at all times duly regardful of appellant's rights. In the light of later events, their conclusions drawn from the facts before them were erroneous, but up to the time the warrant was issued the facts that had been disclosed pointed strongly to appellant's guilt, and, under the circumstances, the officers would have been remiss in their duty had they failed to cause a warrant for his arrest to issue. Their acts must be judged by the facts as they appeared then, not as they appear now. Appellant's arrest was unfortunate, and later events have demonstrated his innocence; but the facts in the possession of the officers at the time the warrant was procured were amply sufficient to afford probable cause for appellant's arrest.

Appellant finally complains of the instructions that were given, and especially of instruction No. 5, which reads as follows: "The court instructs the jury that at the time the warrant mentioned in the evidence was read to the plaintiff by the defendant, T. M. Maple, it was the duty of the defendants, T. M. Maple and R. P. Thornberry to take the plaintiff before R. E. Watkins, Judge of the Owensboro Police Court, who was authorized to fix, approve and accept a bond from the plaintiff for his appearance before such Judge at a time to be fixed by the Judge, unless such right of the plaintiff was waived by him; and, although you may believe as set out in instruction No. 4 you will find for the plaintiff, unless you believe from the evidence that the plaintiff waived his right to be taken before such Judge, or upon being asked, if he was asked, by defendant, R. P. Thornberry if he, the plaintiff, wanted to be taken before the said Judge, for the purpose of fixing his bond, the plaintiff declined to be so taken and left the matter of the arrangement for his bond with one T. L. Duke, then, in that case, it was the duty of defendants T. M. Maple and R. P. Thornberry, to confine plaintiff in prison until such bond was fixed, executed and approved by said Judge, and if you so believe and believe as set out in instruction No. 4 you will find for the defendants, T. M. Maple and R. P. Thornberry, even though you may believe from the evidence the said Judge arbitrarily refused to fix, take or approve such or any bond for the plaintiff." It is urged that this instruction is erroneous because it assumes and indirectly

instructed the jury that the judge of the Owensboro police court was the only one before whom the officers could have taken the appellant and the only one authorized to fix, approve, or accept a bond for his appearance for trial, and because it requires the jury to find for the defendants if they believe the plaintiff waived his right to be taken before the judge of the police court, without any reference as to how the waiver was procured.

The proof satisfactorily establishes that R. P. Thornberry, chief of police, asked appellant if he desired to be taken before the police judge, and appellant said that it would not be necessary, since his friend T. L. Duke would make arrangements for a bond. The right to be taken before a magistrate to arrange a bail bond may be legally waived. Klotz v. Cook, 184 Ky. 735, 212 S. W. 917; 25 C. J. 525, 526. It seems that the police judge was of the opinion that he was not required to fix and approve bonds in criminal cases on Sunday, but he testified that he did fix the appellant's bond at $1,000 and would have approved a bond on that date if qualified sureties had presented themselves. He said that at least three men offered to sign the bond, but none of them owned sufficient property to qualify them as sureties. Appellant introduced as witnesses a number of persons who testified that they were ready and willing to sign his bond, but none of them made such a showing before Judge Watkins as would authorize him to accept them on appellant's bond.

The concluding part of instruction No. 5 probably should have been omitted, but in the circumstances we are convinced that no substantial right of appellant was prejudiced. There was no satisfactory evidence tending to show that Judge Watkins arbitrarily refused to fix or approve bond for the plaintiff but on the other hand it is shown by the overwhelming weight of the evidence that he did fix the bond and that qualified sureties failed to appear before him to sign it. The instructions as a whole fairly presented every issue of fact to the jury upon which there was any substantial evidence.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.