# Goins v. Hudson, Jailer, et al.

(Decided Dec. 13, 1932.)

J. B. JOHNSON for appellant.

TYE, SILER, GILLIS & SILER and W. B. EARLY for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing in Part and Affirming in Part.

Demps Goins brought this suit against T. J. Hudson, jailer of Whitley county, and his surety, the Fidelity & Deposit Company of Maryland, to recover damages for false arrest and imprisonment. At the con-

clusion of the evidence for plaintiff, the court directed a verdict in favor of the surety. The case against the jailer was submitted to a jury, which returned a verdict in his favor. Goins appeals.

The allegations of the petition, briefly stated, are these: On Saturday, August 29, 1931, Goins, who lived in the country, was suffering from a toothache and came to Williamsburg to see a dentist, who gave him treatment. In the afternoon while en route to the courthouse he walked by the jail. Hudson, the jailer, was seated on the porch and invited him to come in. Goins accepted the invitation, and, after talking with Hudson a few minutes, Hudson asked him if he did not want to see some of the persons confined in jail. Goins accepted the invitation, and went into the jail. After remaining there about 10 minutes, he called to Hudson, the jailer, and requested that the jail door be opened so he could go home. Thereupon Hudson wrongfully, unlawfully, willfully, maliciously, and without reasonable or probable cause therefor, and without legal authority and without informing him of his intention to do so, arrested Goins without his consent, and confined him in the jail from about 2:30 p. m. until 6 p. m. The pretended arrest was without a warrant, and Hudson, who made the arrest, did not take him before the most convenient magistrate or any magistrate of the county, but closed the jail door and did not give him an opportunity to communicate with any magistrate or to procure bond. Afterward Goins called to some of his friends passing by and procured his release, but only after he had been in jail for three and one-half hours, during which time he was restrained of his personal liberty, and suffered great pain, mental anguish, humiliation, and mortification. Hudson and his surety filed the same, but separate, answers in two paragraphs. The first paragraph was a general denial. In the second paragraph they pleaded that Hudson was the jailer of the county, and authorized to make arrests; that on the occasion in question Goins was drunk, disorderly, and profanely swearing in a public place, and in the presence of Hudson, the jailer, who arrested him for the offense of being drunk, disorderly, and profanely swearing in a public place; that theretofore the acting county judge for Whitley county had by a general order directed Hudson to confine any and all drunken persons in the jail until they became sober, without first bringing any such person before him as such magistrate; that, pursuant to

and in obedience to said order, he arrested Goins and confined him for a short time while he was drunk; that he did not take Goins in his drunken condition to the nearest magistrate, but, as soon as practicable and within two hours, caused the acting county judge to go to the jail, and there took Goins before said magistrate; that Goins was still drunk, and the magistrate fixed a later day for his trial and released Goins on the promise of relatives that they would take him out of town and care for him until he became sober. Goins demurred to the second paragraph of each answer, and also made a motion to strike the allegation with reference to the order issued by the acting county judge. The demurrers were sustained. Thereafter Goins and his surety filed an amended joint answer pleading in substance that Goins, by express statements and conduct, waived any and all right to be taken before a magistrate, and consented to remain in the jail until the acting county judge could be procured to come to the jail, and then and there stated in words and substance that if Hudson believed he was drunk to leave him in jail, but to notify his son where he was, and said Hudson, acting on said statement, left Goins in jail until the presence of the acting county judge could be procured, and also notified Goins' son where Goins was. The issues were completed by a reply to the amended answer.

According to Goins, he was suffering from toothache, neuralgia, and "flu." His jaw was swollen from an abscess, and he visited Dr. Davis, the dentist, who treated him. As he passed the jail, Hudson said, "Hello, Uncle Demps, come in and have a chair." After talking a few minutes Hudson said, "Uncle Demps, anybody in jail you know you would like to see?" He replied that he did, and accompanied Hudson into the jail. After remaining there a few minutes he rapped on the door and Hudson came. He told Hudson he guessed he had been in there long enough. Hudson said, "Uncle Demps, I can't turn you out." He asked what was the matter. Hudson said, "You come down here all boozed up on something. You're drunk." He said, "I deny the charge," and told Hudson that he had only taken some liniment that the dentist had given him. Hudson turned, around and walked off, and left him. It was then about 3 o'clock. He did not know when he walked in the jail he was going to be charged with any offense. Hudson had no warrant for him, and did not tell him

he was arrested until the second time he came back. He was not taken before any magistrate or judge. He had not committed any offense in the presence of Hudson, or at all. He was there against his consent, and it was very "ill-convenient." Afterwards Ez Rains passed, and he hollowed to him, and told him to tell somebody to come and get him out. They got word to his wife, and he was finally released by Joey Bolton. He was in the jail about three hours. L. D. Moore, city judge of Williamsburg, testified that he was at his office on the occasion in question, and did not leave until 4 or 5 o'clock. Garrett Goins, son of Demps Goins, testified that, after he learned that his father was in jail, he started toward the jail and met T. J. (Hudson), and asked him if his Dad was in jail. T. J. said "Yes," that he had come down all boozed up, and he would not have arrested him if he had not been drinking in front of his house. He got in touch with the others and came to the jail about 5 o'clock. Afterward Joey Bolton came and released his father. Charley Hayes testified that, after Uncle Demps had called the jailer, he stayed in jail for a good while. Dr. R. H. Davis, the dentist, testified that when Goins came to his office he had an abscessed tooth. He gave him a mouth wash and a liniment to be applied to his gums. Goins asked him if he could take a drink of whisky to help him, and he replied it would make him worse. L. R. Uhl, who saw Goins on his way to the jail, never saw him commit any offense, and said that he was not drunk at the time. Others testified as to the condition of Goins' jaw, and efforts made to get him out of jail, but some of them stated that Goins was not drunk, and had not been drinking.

On the other hand, T. J. Hudson testified as follows: He had given Goins work in the jail for a while after he was elected, and they were friends. When Goins passed, he asked how he was. Goins replied, "I'm 60 years old, and never had the damn toothache as bad in my life." Goins also said, "I got a drink of liquor, I thought that would help it, but I don't know whether it will or not." Goins added, "When a man's in pain and suffering most of them like a little liquor." Goins continued his talk and swearing, and he was embarrassed as to what to do. He then asked Goins if there was anybody in the jail that he knew. He said, "I don't know, by God, we'll go in there and see." They went in the jail. He then told Uncle Demps that he would have to take out a warrant for drunkenness.

Uncle Demps said, "If you believe I'm drunk, let me stay here in jail until you get the judge down here, and if he says I'm drunk I'm drunk, and if he says I ain't, I'm not drunk." He then went out and locked the door, and Uncle Demps told him to let his boy know that he was in jail. He went upstairs to look for the judge, but could not find him. He saw Uncle Demps' boy, and told him that his father was in jail drunk. It was about 4 o'clock when Goins came to the jail, and the county court had adjourned and the judge had gone home. Afterward Judge Bolton came to the jail between 5 and 6 o'clock and released Goins. He was not there at the time. He in good faith honestly believed that Goins was drunk at the time, and had no other reason to put him in jail except that he had violated the law in his presence. On cross-examination Hudson testified that he did not arrest him until later. He did not go to the county judge's office because he had information that he was not there. Other witnesses who were present stated that Goins was drinking, and acted as if he had some dope or whisky on him.

The principal ground on which a reversal is asked is the giving of the following instruction:

"T. J. Hudson was jailer and a peace officer of Whitley County, Kentucky, on the 29th day of August, 1931, and as such had a right to and it was his duty to arrest any person committing a misdemeanor in his presence. Profanely cursing and swearing is a misdemeanor; being publicly drunk is also a misdemeanor, and if you believe from the evidence in this case that the plaintiff, Demps Goins, either profanely cursed or swore or was publicly drunk in the presence of T. J. Hudson or defendant had reasonable grounds to believe said Goins was publicly drunk or profanely cursed and swore, then the said Hudson had a right to arrest him and it was his duty to take him forthwith before some magistrate of Whitley County to be dealt with according to law or to retain him in the jail of Whitley County until such time as he could be brought before some magistrate to be dealt with according to law. Any justice of the peace, Police Judge or acting County Judge is a magistrate, and if you believe from the evidence in this case that the defendant Hudson against the will and without the consent of the plaintiff Goins

confined and retained said Goins in the Jail at Whitley County at a time when he was neither publicly drunk nor had profanely cursed nor sworn in the presence or hearing of said Hudson or forcibly or against the will and without the consent of said Goins, retained or confined the plaintiff in jail for an unreasonable length of time and against the will and without the consent of the said Goins failed to forthwith take the said Goins before some magistrate to be dealt with according to law, unless the said Goins waived his rights to be taken before the said magistrate and consented to stay in jail until a magistrate came, then you will find for the plaintiff. Unless you so believe your finding will be for the defendant."

One of the grounds on which the instruction is assailed is that it permitted the jailer to justify if he had reasonable grounds to believe that Goins was publicly drunk in his presence. It is true that under section 36, Criminal Code of Practice, a peace officer may make an arrest without a warrant only when a public offense is committed in his presence, or when he has reasonable grounds for believing that the person arrested has committed a felony. But, in view of other statutes, it has long been the rule that a peace officer who arrests one for being drunk or disorderly in his presence is not liable in an action for false arrest and imprisonment if the person arrested is actually drunk or disorderly in his presence, or he had reasonable grounds to believe, and did believe in good faith, that the person arrested was drunk or disorderly in his presence. Easton v. Commonwealth, 82 S. W. 996, 26 Ky. Law Rep. 960; Weaver v. McGovern, 122 Ky. 1, 90 S. W. 984, 28 Ky. Law Rep, 883; Commonwealth v. Reed, 208 Ky. 587, 271 S. W. 674; Louisville & N. R. Co. v. Creech, 218 Ky. 147, 291 S. W. 15. In principle, therefore, the instruction does not proceed on an erroneous theory, but is incorrect in that it did not submit the element of good faith.

The instruction is also incorrect, in that it told the jury that Hudson had the right to arrest Goins if either he profanely cursed or swore, or was publicly drunk in his presence, or Hudson had reasonable grounds to believe that Goins was publicly drunk or profanely cursed and swore in his presence. Hudson admits that he arrested Goins for drunkenness, and

for no other reason, and so informed Goins. That being true, he could not justify upon another ground which did not cause him to make the arrest. Hogg v. Lorenz, 234 Ky. 751, 29 S. W. (2d) 17; Noe v. Meadows, 229 Ky. 53, 16 S. W. (2d) 505, 64 A. L. R. 648. It follows that the question of profane swearing should not have been included in the instruction.

The instruction is also erroneous in that, after using the words "it was his duty to take him forthwith before some magistrate of Whitley County to be dealt with according to law," it added the words "or to retain him in the jail of Whitley County until such time as he could be brought before some magistrate to be dealt with according to law." The concluding language does not conform to the Code, which provides that, if an arrest is made without a warrant, the defendant shall be forthwith carried before the most convenient magistrate of the county in which the arrest is made. Section 46, Criminal Code of Practice.

We have held that the right to be taken forthwith before a magistrate is one that may be waived, Klotz v. Cook, 184 Ky. 735, 212 S. W. 917; Gray v. McAtee, 233 Ky. 97, 25 S. W. (2d) 65; and in the circumstances here presented it was not error to submit the question of waiver.

The uncontradicted evidence discloses that the police judge was in his office during a large portion of the time that Goins was detained in jail, and no effort was made to take Goins before him, or any other magistrate. On the contrary, he was kept in jail for about three hours. In view of this long detention, there can be no doubt that Hudson was liable, unless Goins waived his right to be taken forthwith before some magistrate by consenting to remain in jail until the acting county judge came.

Upon a consideration of all the facts and circumstances in the case, it is clear that Goins was entitled to recover, unless at the time of his arrest he was drunk in a public place in the presence of Hudson, or Hudson in good faith believed, and had reasonable grounds to believe from the facts and circumstances known to him, that Goins was drunk in his presence in a public place. Moreover, even if he was drunk in a public place in the presence of Hudson, or Hudson believed in good faith, and had reasonable grounds to believe, that he was drunk in a public place in his presence, still he was

entitled to recover for his unlawful detention, unless he waived the right to be taken forthwith before a magistrate by consenting to remain in jail until the acting county judge came.

The appeal also challenges the propriety of the court's action in directing a verdict for the surety. Although the surety filed an answer denying the allegations of the petition and also relying upon the legality of the arrest in the second paragraph, a demurrer was sustained to the second paragraph, thus eliminating from the case the plea of justification. The case then went to trial on a petition supported by evidence showing that Hudson was not acting within the scope of his authority as jailer when he arrested and detained Goins. There being no statute making the surety liable, the case falls within the rule announced in Jones v. Van Bever, 164 Ky. 80, 174 S. W. 795, L. R. A. 1915E, 172; Taylor v. Shields, 183 Ky. 669, 210 S. W. 168, 3 A. L. R. 1619, and other like cases, holding that, where a peace officer acts without authority of law, his act is that of an individual for which the surety on his bond is not liable. It follows that the court did not err in directing a verdict in favor of the surety company.

On the appeal as to the Fidelity & Deposit Company of Maryland, the judgment is affirmed. On the appeal as to Hudson the jailer, the judgment is reversed, and cause remanded for a new trial consistent with this opinion.