Helen Murphy McCRAY, Appellant,

v.

CITY OF LAKE LOUISVILLA, a Municipal Corporation, etc., et al., Appellees.

Court of Appeals of Kentucky.

March 4, 1960.

D. E. Wooldridge, LaGrange, for appellant.

Thos. F. Manby, James A. Hall, Bruce R. Hamilton, LaGrange, for appellees.

PALMORE, Judge.

This is an action for false arrest, assault and battery, and false imprisonment in which appellant seeks $10,000 in damages from various defendants including the police judge, town marshal, two deputy town marshals, and the town trustees of the City of Lake Louisvilla, a city of the sixth class, the city itself, and the surety on the police judge's bond. The appeal is from a dismissal of the complaint on motions to dismiss. We are affirming the action of the trial court.

In July 1956 appellant was arrested in the City of Lake Louisvilla for speeding, precipitating a legal snarl which is now before this court for the fourth time and was aptly described by the late Judge Cammack as a "tempest in a teapot." See Murphy v. City of Lake Louisvilla; Ky. 1957, 303 S.W.2d 306, 307. Chronologically, the situation developed as follows:

In 1955 the trustees of the city had enacted an ordinance making it unlawful to operate an automobile within the city at a speed exceeding 15 miles per hour and prescribing a fine up to $50. Appellant, Helen Murphy (now McCray), a resident of the town, was arrested on July 26, 1956, by the appellee Earl Smith, a deputy marshal for the city, for a violation of that ordinance. Just how the arrest and detention were first effected is a matter as to which the parties are in disagreement, and it has never been made precisely clear in the records of the four cases brought to this court. It was, however, directly in issue in Murphy v. Thomas, Ky.1956, 296 S.W.2d 469, the first case, in which appellant sought a writ prohibiting the appellee Vance Thomas, the police judge, from proceeding to try her on the charge, and it was there found that the deputy marshal had rightfully arrested appellant, without a warrant, for an offense committed in his presence and had thereupon taken her before the police judge. From this point on the basic facts are pretty well settled, though the conceptions of counsel as to their legal effect are widely divergent.

The second scene was enacted on the front porch of the police judge's residence, the dramatis personae at this stage consisting of appellant, the same deputy marshal, and the judge. Appellant's version is that she was then summarily fined $17 without a trial. The other version is that she asked the amount of the fine and was told it would be $17. Be that as it may, all hands agree that she rushed to her car and hurried away. The judge then wrote out a warrant commanding her arrest. The warrant was not supported by oath or affirmation.

The next action, bringing a new face on-stage in the form of Harold Kraus, another deputy marshal, was the arrest of appellant, which evidently took place at her father's house in the town and was effected in the main by Kraus, though Smith, the other deputy, accompanied him. Kraus made this arrest pursuant to the warrant and, according to the complaint herein, in so doing assaulted appellant by pointing a pistol at her. Kraus was named as a defendant in this action but was never served and is not before the court.

At or shortly after the arrest under the warrant the police judge issued a capias pro fine commanding the detention of appellant until satisfaction of the Commonwealth (presumably for the use and benefit of the city) in the sum of $17 recovered against her in the form of a fine for speeding. Kraus and Smith delivered her with this capias to the Oldham County Jail, where she remained for some hour and a half until her father executed a bail bond in the amount of $50. It is alleged that in delivering appellant to the jailer the appellee Smith publicly referred to her as a "prisoner," and that "his manner and

actions toward her was such as to frighten plaintiff and to make her believe and she did believe that she was in danger of bodily harm, and she was thereby assaulted by said defendant."

Trial of the matter before Judge Thomas was set for July 31, 1956, but in the meantime a temporary writ of prohibition issued from this court. On August 28, 1956, after appellant had strenuously objected to his "filing away" the charge pending on the warrant, the police judge entered an outright dismissal of it. The prohibition proceeding theretofore begun in this court culminated on December 7, 1956, with an opinion denying the writ, and in which it was said, inter alia, that the original arrest by Deputy Marshal Smith did not require a warrant, that the warrant issued by Judge Thomas following appellant's hasty departure from his presence was superfluous, and that the capias pro fine was but an awkward mittimus. By this time, of course, any question as to trial of the charge on the original warrant was moot, as it had been dismissed on August 28, 1956.

But things were still moving. On August 10, 1956, appellant had filed an action in the Oldham Circuit Court to declare invalid the city ordinance setting the speed limit at 15 miles per hour; and shortly after the dismissal on August 28, 1956, of the charge pending on the warrant of July 26, 1956, the police judge issued another warrant of arrest against appellant on the same charge, this time with a proper supporting affidavit. While the action was at this stage appellant filed another petition in this court for a writ prohibiting the city and the police court from trying her. The writ was denied in an opinion handed down on June 14, 1957, simultaneously with an opinion declaring the ordinance void. See Murphy v. City of Lake Louisvilla, Ky.1957, 303 S.W.2d 306, and Murphy v. City of Lake Louisvilla, Ky.1957, 303 S.W. 2d 307. Trial on the second warrant was never held. The action now before us was filed July 24, 1957.

The complaint by-passes the events preceding the issuance of the first warrant. It says that the police judge issued the warrant without oath or affirmation and that therefore it was void; that Kraus arrested her on this void warrant; that she was not given the opportunity to obtain bail; that she was clapped into jail by Kraus and Smith on a spurious capias pro fine issued by Judge Thomas when she had not had a trial; that Kraus and Smith knew there had been no trial and that the capias was false; and that she was greatly outraged, mortified, and generally undone.

■ Each of the defendants (except Kraus, who was not found) moved to dismiss on the ground that the complaint failed to state a valid claim. These motions were supported by an affidavit to the effect that the facts alleged in the complaint were the same set of facts pleaded in the original prohibition proceeding decided by this court on December 7, 1956 (Murphy v. Thomas, Ky., 296 S.W.2d 469). The affidavit was controverted by appellant's affidavit denying that they were "the identical or same facts." On these motions the trial court dismissed the complaint as to the appellees, which dismissal operates as an adjudication on the merits. CR 41.02.

■ The first point raised by the appeal is that on a motion for dismissal on the ground that the complaint does not state a claim for which relief can be granted the allegations contained in the complaint must be taken as true. This contention overlooks the fact that matters outside the record may be presented in support of a motion to dismiss and, if not excluded by the court, convert the motion to one for summary judgment under CR 56. CR 12.02. Clay, Kentucky Civil Rules, p. 140. The affidavit in support of the motions to dismiss had the effect of introducing the record in Murphy v. Thomas, Ky.1956, 296 S.W.2d 469, and in spite of appellant's counter-gesture to the effect that the facts were not identical the trial court was justified in finding that there

was no genuine issue as to any material fact and that the appellees were entitled to judgment as a matter of law. That was the practical and legal effect of the order of dismissal.

■■ It is next submitted that the police judge in issuing an arrest warrant not based on oath or affirmation, as required by Const. § 10 (see also Criminal Code of Practice, § 31), is liable for the false imprisonment resulting from an arrest pursuant to that warrant. The institution of a proceeding by an arrest upon a warrant issued without information given under oath before the issuing magistrate would ordinarily result in civil liability on the part of the magistrate for the ensuing arrest and imprisonment. Clark v. Hampton, 1915, 163 Ky. 698, 174 S.W. 490; 22 Am. Jur. 395 (False Imprisonment, § 58). But in this case it has already been held that the warrant was superfluous because the right to re-arrest carried over from the original arrest. Murphy v. Thomas, supra. Moreover, where a defendant has been arrested for an offense committed in the presence of the arresting officer the trial court acquires jurisdiction of him when he is delivered to it by the arresting officer. Prater v. Com., 1926, 216 Ky. 451, 287 S. W. 951. This being the case, it would seem basic that a bench warrant could issue to secure the return of a defendant who has departed without permission of the court after being delivered before it. Surely such a departure would also constitute a contempt of court, for which a re-arrest could be directed orally. An arrested person brought before a magistrate must hold still long enough to permit the orderly disposition of his case. The right of detention and re-arrest under such circumstances is a necessary element of judicial authority.

■■ Though the issue was specifically treated in Murphy v. Thomas, supra, appellant again attacks the lamentable capias pro fine. We do not find in this paper the sinister attributes with which she insists on investing it. Having before him a person arrested and charged with an offense it was incumbent on the magistrate either to try her forthwith, admit her to bail, or commit her to jail pending trial or posting of bail bond. The latter procedure would require a mittimus, or commitment warrant. See 22 C.J.S. Criminal Law § 349 p. 510. Village police courts are not exactly noted for wig and gown protocol, and it may be that Judge Thomas actually considered that he had tried, convicted, and fined appellant, and intended to commit her on a capias. But under the circumstances it really makes no difference, because she would have been just as effectively under detention had a proper mittimus been issued as she was pursuant to the capias, and no damage was done. She was admitted to bail.

■ The serious problem presented by this appeal is the question of whether the ruling in Murphy v. City of Lake Louisvilla, Ky.1957, 303 S.W.2d 307, invalidating the city ordinance fixing the speed limit at 15 miles per hour invalidates the jurisdiction exercised by the police court over the person of the appellant pursuant to the original arrest made by Deputy Marshal Smith. Appellant's position is that since the ordinance was void no public offense was committed in the officer's presence and he had no right of arrest. (cf. Cr.Code § 36, subd. 2), that the arrest was therefore unlawful and conferred no jurisdiction over the person of appellant, and that all further proceedings by the magistrate and the officer were void.

■ It is the general rule that one making an arrest without a warrant has the direct obligation of knowing that an offense is being committed in his presence, and that he can justify an arrest for a crime less than a felony only by showing that the person arrested is actually guilty; good faith, reasonable grounds of belief,

or probable cause ordinarily are not sufficient. Anderson, A Treatise on the Law of Sheriffs, Coroners and Constables (Dennis & Co., Inc., 1941), Vol. 1, p. 161; Wilgus, Arrest Without a Warrant, 22 Mich.L.Rev. 673, 708. However, it does not follow that the magistrate before whom the arrestee is brought does not have jurisdiction. If the defendant is physically before the court in the custody and upon the complaint (though oral) of an arresting officer, the jurisdiction of the court is unaffected by the illegality of the arrest. 14 Am.Jur. 920 (Criminal Law, § 219); Com. v. Gorman, 1934, 288 Mass. 294, 192 N.E. 618, 96 A.L.R. 977, and annotation following. Any other rule would be chaotic, as the court's jurisdiction in a proceeding following an arrest without a warrant would not be established until the final determination of the cause, and if an acquittal signified the absence of jurisdiction from the inception the successful defendant himself might be deprived thereby of his security against double jeopardy. See 15 Am.Jur. 48 (Criminal Law, § 363), and Scalf v. Com., 1922, 195 Ky. 830, 243 S.W. 1034.

■■■■ What, then, of the officer who has made an arrest without a warrant on the basis of an invalid law? Shall he be held liable in an action for false imprisonment? We think not. This court has long since established the doctrine that an officer making an arrest without a warrant in the reasonable and good faith belief that a misdemeanor is being committed in his presence is not liable for false imprisonment, even though it develops that the arrestee is not guilty of any offense. Goins v. Hudson, 1932, 246 Ky. 517, 55 S.W.2d 388; Weaver v. McGovern, 1906, 122 Ky. 1, 90 S.W. 984, 28 Ky.Law Rep. 883; Eaton v. Com., 122 Ky. 7, 90 S.W. 972, 12 Ann.Cas. 874. It is the general rule that a *judicial* officer having jurisdiction is not rendered liable by the fact that he has acted under an invalid statute or ordi-

nance. 22 Am.Jur. 396 (False Imprisonment, § 59); 173 A.L.R. 802, 813 (annotation). This would appear to be a necessary concomitant to the salutary principle that until a law has been declared void the public good demands that validity should be given to the acts of public officers performed under it. See Wendt v. Berry, 1913, 154 Ky. 586, 157 S.W. 1115, 45 L.R.A., N.S., 1101, Ann.Cas.1915C, 493. A failure to apply the principle to the actions of a peace officer would be nothing short of stupid. There is even less reason to expect him to be a constitutional expert than there is to expect it of the village magistrate.

■■■ Before leaving the matter of the original arrest we are obliged to deal with the appellant's insistent contention that she was never placed under actual arrest prior to the issuance of the warrant by the police judge. Considering her singular intransigence throughout the proceedings it is scarcely conceivable that she arrived on the front porch of the police judge's home in the presence of the deputy marshal and the judge without having been placed under detention. But nevertheless, the fact of the arrest was a material issue in Murphy v. Thomas, Ky.1956, 296 S.W.2d 469, was judicially determined in that action, and is res judicata. 30 Am.Jur. 411 (Judgments, § 371); Carroll v. Fullerton, 1926, 215 Ky. 558, 286 S.W. 847.

■■■ It is maintained that the appellee City of Lake Louisvilla is liable in damages for the indignities experienced by the appellant by reason of its void ordinance, otherwise we should make a municipality a "monster above the law." Well may it be that we live in a land of monsters, for the law is clear that there is no liability. See 38 Am.Jur. 298, 301 (Municipal Corporations, §§ 602, 604); McQuillin, The Law of Municipal Corporations, 3d ed. (Callahan & Co., 1949), § 53.222; Hershberg v. City of Barbourville, 1911,

142 Ky. 60, 133 S.W. 985, 34 L.R.A.,N.S., 141, Ann.Cas.1912D, 189; Elrod v. City of Daytona Beach, 1938, 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049, and annotation following. The same is true with respect to appellant's claim that the town trustees are liable for passing the invalid ordinance and maintaining it on the city's books. Generally speaking, no liability attaches to them on account of their enactment of invalid legislation. 62 C.J.S. Municipal Corporations § 545b, p. 1009; McQuillin, supra, § 53.64; Com. v. Kenneday, 1904, 118 Ky. 618, 82 S.W. 237, 4 Ann.Cas. 940; Hicksville v. Blakeslee, 1921, 103 Ohio St. 508, 134 N.E. 445, 22 A.L.R. 119.

The last remnant of this vexatious litigation is the question of whether the trial court's action in dismissing the complaint was error as to the attempted statement of a cause of action against the appellee Smith, the deputy marshal, for assault. He is alleged to have called appellant a prisoner. That was nothing more than a statement of the truth, made under proper circumstances. He might well have been less charitable. It is alleged also that his manner and actions toward appellant were such as to frighten her. Without considering whether this allegation was a sufficient description of a wrong under our liberal rules of pleading we are disposed to construe the complaint in connection with appellant's affidavit filed in this court in Murphy v. Thomas, supra, wherein she purported to set forth under oath the entire details of her treatment at the hands of the appellees. In that affidavit she includes the pistol episode (said in her complaint herein to have been committed by Kraus) and says that the officer delivering her to the jailer said, "we have a prisoner out here." Nothing is said of any further actions which might have constituted an assault. Under the circumstances we do not find the action of the trial court to be in error.

The judgment is affirmed.