C. C. Howard GRAY and James N. Gray
Construction Company, Inc.,
Appellants,

v.

CENTRAL BANK AND TRUST COMPA-
NY, Executor of the Estate of Garvice
D. Kincaid, and Central Bank and Trust
Company, Appellees.

CENTRAL BANK AND TRUST COMPA-
NY, Executor of the Estate of Garvice
D. Kincaid, and Central Bank and Trust
Company, Cross-Appellants,

v.

C. C. Howard GRAY and James N. Gray
Construction Company, Inc.,
Cross-Appellees.

Court of Appeals of Kentucky.

Feb. 17, 1978.

Lyle G. Robey, Stoll, Keenon & Park, Lexington, H. J. Herbert, Jr., Wilson, Herbert & Garmon, Glasgow, for appellants and cross-appellees.

Earl S. Wilson, Kincaid, Wilson, Schaeffer & Hembree, Harry B. Miller, Jr., Lexington, for appellees and cross-appellants.

Before HOGGE, PARK and WINTERSHEIMER, JJ.

HOGGE, Judge.

In 1974 the Lexington-Fayette Urban County Airport Board advertised for bids for the construction of a new airport terminal building. Seven Lexington banks, including Central Bank and Trust Company, were to participate in financing the project. On August 23, 1974, the bids were opened, and Gray Construction Company, Inc. was the lowest bidder. White & Congleton Construction Company was the second lowest bidder. The initial bids were valid for a fifteen day period.

On September 6, 1974, one day before the bids expired, the air board met but was unable at that meeting to reach a decision as to whom the contract would be awarded. Both Gray and White & Congleton were asked if they would extend their bids for an additional ten days. White & Congleton agreed to extend their bid. However, Gray refused to extend his bid. Nevertheless, both bidders were asked to submit a list of materials, equipment, and subcontractors. Gray's list of materials and equipment was found to contain major substitutions.

Garvice D. Kincaid was a member of the air board and, subsequent to the September 6 meeting, he initiated an investigation of Gray Construction. On September 16, 1974, members of the air board met with representatives of the banks that were to provide financing for the project. At that meeting, Kincaid disclosed the results of his investigation and expressed reservations about the qualifications of Gray Construction Company. On September 17, the air board met and voted unanimously to select White & Congleton as the contractor.

Following the decision of the air board, Gray Construction threatened to take legal action against the air board if the contract was awarded to White & Congleton. As a result, First Security National Bank and Trust Company withdrew its financial support. Faced with this dilemma, White & Congleton offered to withdraw its bid and allow the air board to solicit new bids. This offer was accepted by the air board, and new bids were solicited. Upon rebidding, White & Congleton's bid was the lowest and they were awarded the contract.

Appellant, thereafter, filed this action alleging that Garvice Kincaid had defamed him and interfered with prospective business relationships. The trial court granted a summary judgment in favor of the defendant on the ground that members of the air board enjoy an absolute privilege from liability for statements made by them in the scope of their duties.

There has been considerable dispute concerning whether the alleged defamation and interference with prospective contractual relationships were separate causes of action and which, if either, survived the death of Garvice D. Kincaid.

Prosser, in his treatise, *Law of Torts*, 4th Edition, Chapter 25, Section 130, at page 926 states:

> Defamation, interference with contract, injurious falsehood, and the broader tort of interference with prospective economic relations, are all different phases of the same general wrong of depriving the plaintiff of beneficial relations with others . . . the greatest protection is given to personal reputation, and existing contracts, the least to com-

petitive interest in future advantage
. . .

At page 924, Prosser further states:

In general, it may be said that injurious falsehood which is a tort that never has been greatly favored by the law, is *subject to all of the privileges* recognized both in cases of personal *defamation* and in those of other types of *interference with economic advantage.* The question of *absolute privilege* to disparage in judicial, legislative, and executive proceedings has seldom arisen, except in connection with pleadings, motions, and the like in the course of. litigation, *where it has been recognized.* [Emphasis added.]

On page 953 in ff. 97, Prosser further states:

Although there are almost no cases, it appears that the *absolute privileges* in *defamation* will be *available* as a defense here. (cases of interference with prospective economic relations.) [Emphasis added.]

■ We are, therefore, of the opinion that any privilege conferred by statute applies equally to actions founded upon defamation and to actions founded upon the tort of interference with prospective economic relations.

KRS 84.050(5) extends absolute immunity to members of city legislative bodies. In *Jacobs v. Underwood*, Ky., 484 S.W.2d 855 (1972), the Court of Appeals discussed the immunity conferred by KRS 84.050(5) and stated at page 857: "We believe the general assembly has effectively *granted to members of city legislative bodies an absolute privilege* under which they cannot be liable for statements made during a debate before a formal meeting of the assembly." [Emphasis ours.]

Legislative status has been delegated to city/county air boards by KRS 183.132, which provides as follows:

(1) Any city or county acting jointly, or in any combination of two or more cities and/or counties may establish a nonpartisan airboard composed of six members.

(2) The board shall be a body politic and corporate with the usual corporate attributes, and in its corporate name may sue and be sued, contract and be contracted with, and do all things reasonable or necessary to effectively carry out the duties prescribed by statute. *The board shall constitute a legislative body* for the purposes of KRS 183.630 to 183.740. [Emphasis ours.]

While KRS 183.630 to 183.740 specifically relate to the issuance of revenue bonds, the air board was created by an act of legislature, delegating to it numerous legislative powers, functions, and duties. For example, KRS 183.133 grants to the air board the power to adopt such ordinances as it may find necessary to effectuate the duties imposed by statute. Violations of such ordinances shall be prosecuted in police court or county court. This is clearly a legislative function.

■ Thus, it is the opinion of this court that the air board is a legislative body and, as such, its members are granted absolute immunity for statements made while acting within the scope of the duties imposed upon them by statute.

■ It is also the opinion of this court that Kincaid, although simultaneously protecting the interests of Central Bank, was acting within the scope of his duties as a member of the air board, in as much as he was seeking to insure that the contract was awarded to the lowest and best bidder, and thereby enjoyed an absolute privilege from the liability for his remarks. This privilege extends to protect both the estate of Kincaid and Central Bank from liability for either cause of action. *Spears v. Burchett*, Ky., 289 S.W.2d 731 (1956); *Cheasapeake & O. R. Company v. Williams' Adm'x.*, 300 Ky. 850, 190 S.W.2d 549 (1937).

■ Although the preceding ground is adequate to support the judgment, the following grounds may also have been sufficient to support the judgment. It has often been held that the judgment of the trial court must be affirmed if there exists any valid ground which supports it. *Haddad v.*

*Louisville Gas & Electric Company,* Ky., 449 S.W.2d 916 (1969). First, as to the defendant Garvice D. Kincaid, it cannot be disputed that his death terminated the cause of action against him and his estate for slander. KRS 411.140 provides that actions for slander and libel do not survive the death of the tortfeasor.

■ Second, the appellants have utterly failed to prove that they would have been awarded the contract in the absence of appellee's interference. The record clearly discloses that the appellant did not have before the air board a valid bid. Gray's fifteen day bid expired on September 7, 1974, and the appellant refused to extend the bid beyond that date. Even so, the appellant's bid did not comply with the requirements of the bidding documents, in that he had substituted a number of construction materials without obtaining the approval of the air board's architect. Gray also failed to comply with the air board's request that he submit a list of the subcontractors he proposed to employ.

■ Appellees have filed what has, perhaps erroneously, been designated as a cross-appeal alleging that the trial court improperly allowed into the record evidence relating to statements made during a meeting of the air board. Since the appellees do not attack any portion of the judgment, this is not properly the basis for a cross-appeal. The issue may, nevertheless, be raised in the appellees' argument in support of the judgment even in the absence of a cross-appeal. See *Clark v. Wells-Elkhorn Coal Company,* 215 Ky. 128, 284 S.W. 91 (1926). The cross-appeal is accordingly dismissed.

Judgment affirmed.

All concur.

PARK, Judge (concurring).

Although I concur in the result reached in the majority opinion, I cannot agree that all of the actions taken by Garvice D. Kincaid were absolutely privileged under the provisions of KRS 84.050(5). However, I believe that the judgment of the circuit court should be affirmed for other reasons.

In *Jacobs v. Underwood,* Ky., 484 S.W.2d 855, 857 (1972), the court recognized that, at common law, members of quasi legislative bodies enjoyed only a qualified privilege. The statements of members of such quasi legislative bodies were privileged only if the statements made were without malice and without reckless disregard for the truth. The question whether the statements were reckless or malicious was generally for the jury. In the *Jacobs* case, the defamatory statements were made by a member of the Lexington City Commission during a meeting of the commission. At the time, the city of Lexington was operating under the city manager form of government. KRS 89.390 *et seq.* The city of Lexington was a second class city and was subject to all of the general statutes applicable to second class cities to the extent that they were not inconsistent with the city manager form of government. KRS 89.400. Chapter 84 of the Kentucky Revised Statutes makes general provision for the government of cities of the second class. KRS 84.050(5) provides:

For anything said in debate, members of the general council are entitled to the same immunities and protection allowed to members of the general assembly.

In the *Jacobs* case, the court held that KRS 84.050(5) conferred an absolute privilege on members of the city council for statements made during a meeting. *Id.* at 857. However, I do not believe that the absolute immunity provided members of city councils of cities of the second class under KRS 84.050(5) can be extended to the members of an airport board organized under Chapter 183 of the Kentucky Revised Statutes.

KRS 183.132(2) provides that an airport board is "a body politic and corporate" and that it constitutes "a legislative body" for the purpose of issuing revenue bonds. Without doubt, the airport board is a municipal corporation. However, it does not follow that the airport board is governed by the statutes applicable to a city of the second class, thereby affording its board members the absolute immunity provided by KRS 84.050(5). In the absence of any

specific legislation applicable to airport boards, the members of an airport board possess only a qualified, rather than absolute, privilege for statements made during official meetings.

Furthermore, the record establishes that on September 16, 1974, Kincaid met with representatives of the other banks proposing to finance the construction of the airport terminal. Kincaid stated that he would withdraw the Central Bank and Trust Company from participation in the loan if Gray Construction were awarded the contract. On that occasion, Kincaid was not acting solely as a member of the airport board. Clearly, Kincaid was also acting in his capacity as president and director of the Central Bank. The court should be extremely reluctant to cloak members of quasi municipal corporations such as an airport board with absolute immunity when they are acting in a dual capacity.[1]

Even though Kincaid should not have absolute immunity for his actions, it does not follow that the appellants have shown that there was any genuine issue of material fact. By their pleading, the appellants have attempted to set up three possible theories of liability on the part of Kincaid and Central Bank: (1) slander; (2) injurious falsehood; and, (3) wrongful interference with prospective contractual relations. In my opinion, the record demonstrates that the appellants were not entitled to recover on any theory.

As the basis for the action for slander, Gray relies upon three statements allegedly made by Kincaid. According to Gray, Kincaid stated that Gray was (1) wet behind the ears; (2) twenty-three years of age, rather than twenty-four; and, (3) inexperienced in large construction projects. These statements are not defamatory per se. The language in question is not calculated to subject Gray to hatred, ridicule, contempt, or disgrace, or to induce an evil opinion of him in the minds of right thinking people. See *Bell v. Courier Journal and Louisville Times Company,* Ky., 402 S.W.2d 84 (1966), and the cases collected in the annotation, 6 A.L.R.2d 1008.

With respect to Gray Construction Company, Kincaid is alleged to have stated that the company had little experience in projects of the magnitude of the airport terminal. This statement is not defamatory. It is not a charge of general incompetence, but related solely to the company's ability to do a particular job. See *Manire v. Hubbard,* 110 Ky. 311, 61 S.W. 466 (1901). Kincaid is also alleged to have stated that the company failed to provide a requested list of sub-contractors and materials to be used. From the record, it is apparent that this statement is true, and, in any event, it is not defamatory. Kincaid also read from a Dun & Bradstreet Report on the construction company. As a member of the airport board and president of the Central Bank, Kincaid clearly was entitled to consider the Dun & Bradstreet Report, and he was privileged to pass that information on to the other board members and the representatives of the other banks participating in the terminal construction loan. The record conclusively demonstrates that neither Gray nor Gray Construction Company had any valid claim for defamation against Kincaid.

Although the same statements which could give rise to an action for defamation can also be the basis of an action for injurious falsehood, there are substantial differences between the two actions. In an action for injurious falsehood, not only must the plaintiff show a false statement with respect to the plaintiff's business, but the plaintiff must also plead and prove special damage. W. Prosser, *Law of Torts* § 128 (4th ed. 1971). In the present case, the record establishes that there can be no special damages. Gray Construction Company's bid had expired by its own terms. Gray Construction refused to extend the period of its bid without an agreement by the airport board to increase the contract price. This was never done. Consequently,

---

1. I would afford Kincaid only a qualified privilege under the *Restatement (Second) of Torts,* § 895 D(3)(b) (Tentative Draft No. 19, 1973).

See *Thompson v. Huecker,* Ky.App., 559 S.W.2d 488 (1977).

at the time the board determined to award the contract to White and Congleton, the only valid bid before the airport board was the bid of White and Congleton. Gray Construction Company cannot claim that it was deprived of the contract when it refused to extend the period of its bid.

The last theory of liability is based upon Kincaid's threat to withdraw Central Bank from the financing of the airport terminal if the contract were awarded to Gray Construction Company. In effect, Kincaid was charged with improper interference with a prospective contractual relationship. However, it is difficult to see how Kincaid induced or caused the airport board not to enter into a contract with Gray Construction Company when Gray Construction Company itself refused to extend its bid. Furthermore, Kincaid had a right to act to protect both the interests of the airport board and the Central Bank in attempting to persuade the other members of the airport board not to contract with Gray Construction Company. Kincaid did not employ wrongful means which were themselves tortious. Consequently, Kincaid did not interfere improperly with a prospective contractual relation between Gray Construction Company and the airport board. *Restatement (Second) of Torts,* §§ 769 and 770 (Tentative Draft No. 23, 1977).

For the foregoing reasons, I do not believe that the circuit court erred in sustaining the motion for summary judgment.