**GENERAL STEEL CORPORATION,**
Appellant,

v.

Donna COLLINS d/b/a Collins Game
Room & Restaurant, Appellee.

No. 2005–CA–001647–MR.

Court of Appeals of Kentucky.

June 23, 2006.

John T. Aubrey, Manchester, KY, for appellant.

Clint J. Harris, Manchester, KY, for appellee.

Before COMBS, Chief Judge; MINTON, Judge; HUDDLESTON, Senior Judge.[1]

*OPINION*

COMBS, Chief Judge.

General Steel Corporation ("General Steel") appeals from an order of the Clay Circuit Court denying its motion to compel arbitration under the terms of a commercial contract. The trial court determined that the arbitration clause upon which General Steel relies was not enforceable. We affirm.

On May 21, 2004, Steve Collins, as the authorized representative of Collins Game Room & Restaurant, agreed to purchase a building engineered to specifications and delivered by General Steel, a Colorado corporation. Above the signature line, the written contract provided as follows:

THIS ORDER IS SUBJECT TO THE TERMS AND CONDITIONS ON THIS PAGE AND ON THE SEPARATE CONDITIONS PAGE WHICH I ACKNOWLEDGE RECEIVING. BUYER HEREBY ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS AGREEMENT AND AGREES TO ALL OF THE TERMS HEREIN CONTAINED. BUYER'S SIGNATURE REPRESENTS ACCEPTANCE OF GENERAL STEEL CORPORATION'S OFFER AS SET FORTH HEREIN AND CONSTITUTES A BINDING CONTRACT. SELLER APPROVES THE TERMS AND CONDITIONS AS SUBMITTED HEREIN TO BUYER AND DOES NOT AGREE TO ANY ALTERATION OR MODIFICATIONS ADDED OR OTHERWISE SOUGHT BY BUYER. ANY ADDITIONAL PROVISIONS, CHANGES OR MODIFICATIONS TO THIS ORDER SOUGHT BY BUYER SHALL BE VOID AND OF NO EFFECT UNLESS AGREED IN A SEPARATE WRITING SIGNED BY BOTH PARTIES.

Enumerated paragraph 16 of the separate "conditions" page contained a dispute resolution clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to this contract, or the breach thereof," naming Denver, Colorado, as the situs of the arbitration. Collins obliterated the arbitration clause by marking it out entirely.

On December 15, 2004, Donna Collins, d/b/a Collins Game Room & Restaurant (referred to collectively as "Collins"), filed a complaint against General Steel. Collins sought to recover the $24,000.00 deposit

1. Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

made in May toward the purchase of the steel building. General Steel answered and denied that Collins was entitled to a refund of the deposit. It also demanded that the complaint be dismissed and that the matter be referred to arbitration "as set forth within the contract and pursuant to motion filed herein." Following a hearing, the trial court denied the motion. This appeal followed.

General Steel contends that the trial court erred by concluding that there was "no meeting of the minds" with respect to an agreement to arbitrate any dispute arising between the parties. It argues that Collins's obliteration of the arbitration provision of the contract did not affect the enforceability of the clause. It also contends that the trial court lacked jurisdiction to decide the issue. We disagree.

KRS [2] 417.050 reads in pertinent part as follows:

> A written agreement to submit any existing controversy to arbitration or a provision in written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, **save upon such grounds as exist at law for the revocation of any contract.**

(Emphasis added.) KRS 417.060 provides:

> (1) On application of a party showing an agreement described in KRS 417.050, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration. **If the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised.** The court shall order arbitration if found for the moving party; otherwise,

the application shall be denied. (Emphasis added.)

The emphasized language in KRS 417.060(1) is a savings clause. It reserves for adjudication by a court all issues concerning the existence or validity of the agreement of parties to submit to alternative dispute resolutions. *Louisville Peterbilt, Inc. v. Cox,* 132 S.W.3d 850 (Ky.2004).

While "any doubts concerning the **scope** of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) (emphasis added), the **existence of a valid arbitration agreement as a threshold matter** must first be resolved by the court. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The court—not an arbitrator—must decide whether the parties have agreed to arbitrate based on rudimentary principles governing contract law. The Clay Circuit Court did not exceed its jurisdiction under KRS 417.050 by refusing to order arbitration in this matter; nor did it err by determining that the parties had not reached a meeting of the minds to arbitrate their disputes.

General Steel contends that the arbitration clause remained binding on the parties despite Collins's clear and deliberate obliteration of the arbitration provision. It argues that sections of the Uniform Commercial Code ("UCC") as adopted by Kentucky apply so as to void Collins's attempt to nullify the provision. We disagree.

KRS 355.2–207 provides, in relevant part, as follows:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reason-

**2.** Kentucky Revised Statutes.

able time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract....

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, **together with any supplementary terms** incorporated under any other provisions of this chapter. (Emphasis added.)

■ This section of the UCC was intended to alter the "mirror-image" rule of the common law under which the terms of an acceptance were required to be identical to the terms of the offer.[3] *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, (6th Cir.1972).

This section of the Code recognizes that in current commercial transactions, the terms of the offer and those of the acceptance will seldom be identical. Rather, under the current "battle of the forms," each party typically has a printed form drafted by his attorney and containing as many terms as could be envisioned to favor that party in his sales transactions. Whereas under common law the disparity between the fine-print terms in the parties' forms would

have prevented the consummation of a contract when these forms are exchanged, Section 2–207 recognizes that in many, but not all, cases the parties do not impart such significance to the terms on the printed forms.

*Id.* at 1166. A court may conclude that the parties have formed a contract even where the acceptance of the offer contains terms additional to or different from those stated in the offer. As long as the parties demonstrate their mutual assent to the essential terms of an agreement, a written contract is deemed to exist. Under these circumstances, the contract is construed to consist of the **essential terms of the offer** to which the offeree's response has pledged its agreement. *Flender Corp. v. Tippins International, Inc.*, 830 A.2d 1279 (Pa.Super.2003).

■ General Steel's argument depends upon a fundamental misconception of the purpose and effect of KRS 355.2–201. A majority of jurisdictions holds that the conflicting terms between an offer pursuant to KRS 355.2–207 and acceptance are properly subject to the "knockout" rule. *See Flender Corp., supra.* Where the terms of the offer and acceptance are clearly at odds, they cancel out one another, and neither becomes a part of the contract. Under KRS 355.2–201(1), the effect of Collins's obliteration of the arbitration clause was to eliminate it from the parties' agreement.[4]

■ General Steel argues in the alternative that the provisions of the arbitration clause remained binding despite the oblit-

---

**3.** This section of the UCC "has been described as a 'murky bit of prose,' as 'not too happily drafted,' and as 'one of the most important, subtle, and difficult in the entire Code, and well it may be said that the product as it finally reads is not altogether satisfactory.' "

*Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1165 (6th Cir.1972), (citations omitted).

**4.** Section 2–207(2) is inapplicable since it addresses the treatment of *additional* terms supplied by the offeree rather than *different or deleted* terms.

eration because the terms of the contract provided that General Steel would not agree to any alterations or modifications; that the buyer accepted all conditions and terms by his signature; and that any attempt by the buyer to alter or to modify the contract was void. We disagree.

Collins clearly and deliberately rejected the arbitration provision contained in the offer. By executing the general terms of the contract, Collins did not waive his right to reject the specific arbitration clause proposed by General Steel. Although this arbitration provision was material to the terms of the parties' agreement, it was not essential to consummation of the contract.

■ General Steel last contends that "the modification sought by plaintiff herein is a material alteration of the terms of the contract not supported by any consideration." We disagree. Collins has not sought a "modification" of the parties' agreement. As correctly construed by the court pursuant to the provisions of the Uniform Commercial Code, the mutual agreement never included a requirement for arbitration. The trial court did not err by refusing to enforce this term of General Steel's form contract against Collins as Collins never assented to the totality of the form as offered by General Steel.

We affirm the order of the Clay Circuit Court.

ALL CONCUR.