OLSHAN FOUNDATION REPAIR AND WATERPROOFING, d/b/a Olshan Foundation Repair Co. of Oki, LP, Appellant,

v.

Jodi OTTO and Fred Otto, Appellees.

No. 2007–CA–002008–MR.

Court of Appeals of Kentucky.

Jan. 16, 2009.

Christopher R. McDowell, Richard P. Corthell, Cincinnati, OH, for appellant.

Robert E. Blau, Zachary S. Smith, Cold Spring, KY, for appellees.

Before STUMBO and THOMPSON, Judges; GUIDUGLI,[1] Senior Judge.

*OPINION*

STUMBO, Judge.

Olshan Foundation Repair and Waterproofing, d/b/a Olshan Foundation Repair Co. of OKI, LP (hereinafter "Olshan") appeals from an order of the Campbell Circuit Court denying its motion to compel arbitration and stay an action brought by Fred Otto and Jodi Otto ("the Ottos"). Olshan contends that the circuit court erred in concluding that the Ottos were not parties to a contract with Olshan and did not agree to arbitration. For the reasons stated below, we reverse the order on appeal.

In November 2002, Mark Schnelle was the owner of a single family residence situated in Fort Thomas, Kentucky. Schnelle entered into a contract with Olshan providing that Olshan would perform repairs on the home to prevent further settling of its foundation. The work, which cost $11,700, consisted of the installation of ten exterior pilings and four wall braces.

Sometime thereafter, Schnelle sold the home to Jerry Jansen. In June 2004, Jansen contracted with Olshan to undertake additional work on the foundation, including the installation of four more pilings, three "Wall Lock" anchors and one brace. Most of the work performed for Schnelle and Jansen was covered by a fully-transferrable lifetime warranty.

---

1. Senior Judge Daniel T. Guidugli sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

The Ottos then purchased the home from Jansen, who provided a copy of the warranty to them and who stated that any basement leaks which had previously occurred had been remedied by Olshan's repairs. According to the record, the home's basement flooded on July 22, 2006. The Ottos contacted Olshan, which they would later maintain failed to correct the problem as provided under the warranty. The Ottos then had the basement inspected by Dwyer Companies, which allegedly found a bag of plastic stuck in a foundation crack which was being used to stop a water leak. The Ottos would later allege Dwyer told them that the Olshan foundation repair was defective. The Ottos filed an insurance claim which was denied. They then contracted with Dwyer, Espenscheid Plumbing and other contractors to repair the foundation.

On June 1, 2007, the Ottos filed the instant action against Olshan in Campbell Circuit Court. They claimed that Olshan provided warranties to Schnelle and Jansen which were transferable to any subsequent owner and therefore were assigned and transferred to them. The complaint, which alleged breach of contract, breach of implied and express warranties and negligence, maintained that Olshan failed to provide warranty work to remedy the Ottos' foundation problem, resulting in damages in the amount of $12,103.19.

The matter proceeded in Campbell Circuit Court, and on July 16, 2007, Olshan filed a motion to compel arbitration. As a basis for the motion, Olshan directed the court to arbitration clauses set out in its contracts with Schnelle and Jansen, which it maintained expressly required that all disputes arising under the contracts must be submitted to binding arbitration administered by the American Arbitration Association.

After considering the motion, the circuit court rendered an order on September 12, 2007, denying the relief sought. Relying on *General Steel Corporation v. Collins*, 196 S.W.3d 18 (Ky.App.2006), the court determined that the Ottos could not be compelled to submit to arbitration because they were not parties to the Olshan–Schnelle and Olshan–Jansen contracts. This appeal followed.

On October, 23, 2007, the Ottos filed with the Court of Appeals a "Memorandum in Support of Motion to Dismiss," which was characterized by the Clerk's office as a Motion to Dismiss Appeal.[2] The motion alleged that the order denying the motion for arbitration could not be appealed because it is interlocutory. It further claimed that even if the order was appealable, Olshan improperly followed the procedural guidelines set out in Kentucky Rules of Civil Procedure (CR) 73.02 rather than CR 65.07 which governs interlocutory appeals. Olshan responded that the order on appeal was interlocutory and that it properly relied on the procedure set out in CR 73.02.

The motion went before a panel of this Court, which rendered an order on February 18, 2008, denying the Ottos' request to dismiss upon determining that it was not sufficiently advised to rule upon the merits of the motion. The order was without prejudice, however, and the parties were given leave to raise the matter in their written arguments which they have done.

■ In response to the Ottos' motion, Olshan now argues that it properly and

2. A "Receipt Notice" from the Clerk's Office dated October 23, 2007, states that "The document listed below has been received and filed in this office today in the above case:

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS/TREATED AS APPELLEE'S MOTION TO DISMISS APPEAL."

timely filed its notice of appeal from the circuit court's September 12, 2007, order denying Olshan's motion to compel arbitration. It directs our attention to KRS 417.220, wherein the General Assembly created a statutory right to interlocutory appeal arising under the Kentucky Uniform Arbitration Act ("KUAA"). Olshan further notes that the Ottos have conceded that the instant appeal is interlocutory in nature, and it argues that CR 73 is a proper procedural mechanism with which to prosecute an interlocutory appeal.

KRS 417.220(1) provides that "An appeal may be taken from: (a) An order denying an application to compel arbitration. . . ." This statutory right, which by its terms is applicable to the KUAA, has been recognized in the case law and such an appeal is said to be interlocutory because it precedes the adjudication of the underlying claim. *The Drees Co. v. Osburg*, 144 S.W.3d 831 (Ky.App.2003).

*Kindred Hospitals Limited Partnership v. Lutrell*, 190 S.W.3d 916 (Ky.2006), addressed the question of whether CR 73 or CR 65.07 is the proper procedural mechanism for appealing from an order denying interlocutory relief. It states,

> We hold that a party may appeal the decision of a trial court, which implicates any of the enumerated items in KRS 417.220(1), utilizing either a motion for interlocutory relief pursuant to CR 65.07, or a notice of appeal pursuant to CR 73, as long as that party fulfills the requirements and meets the burdens in so making the appeal. But in the future, a party may only choose one route.

*Kindred* at 922.

Under *Kindred*, it is quite clear that a party prosecuting an interlocutory appeal from an order denying a motion to compel arbitration under the KUAA may proceed either under CR 65.07—which addresses interlocutory relief—or under the general appellate procedure set out in CR 73. The Ottos contend that Olshan's motion to compel arbitration was unrelated to the provisions of the KUAA, and that as such *Kindred* and KRS 417.220 have no bearing on the matter. Olshan's motion to compel arbitration, however, was expressly brought pursuant to the KUAA and Federal Arbitration Act. As such, *Kindred* is dispositive and Olshan's interlocutory appeal was properly brought via CR 73.

■ Olshan's substantive argument and the focus of its appeal is its contention that the circuit court erred in denying its motion to compel arbitration. It maintains that the circuit court improperly determined that the Ottos could not be bound by the arbitration provisions of the Olshan–Schnelle and Olshan–Jansen contracts since the Ottos were not parties to them and could not have reached a meeting of the minds with Olshan on the issue of arbitration. Similarly, Olshan contends that the Ottos are estopped from avoiding the application of the arbitration provisions of the contracts while simultaneously seeking to enforce the contracts' warranty provisions. Olshan seeks an order reversing the circuit court's order denying the motion to compel arbitration and remanding the matter for arbitration in accordance with the terms of the contracts.

Olshan directs our attention to the arbitration language at issue. The Olshan–Schnelle contract states,

> Notwithstanding, any provision in this agreement to the contrary, any dispute, controversy or lawsuit between any of the parties to this agreement about any matter arising out of this agreement, shall be resolved by mandatory and binding arbitration administered by the American Arbitration Association ("AAA") pursuant to the General Arbitration Act and in accordance with this

arbitration agreement and the commercial arbitration rules of the AAA to the extent that any inconsistency exists between this arbitration agreement and such statutes by any court having jurisdiction and in accordance with the practice of such court.

The Olshan–Jansen contract sets out a very similar provision with only a minor change in language.

The circuit court relied on *General Steel Corporation, supra,* in concluding that in "order for an arbitration agreement to be enforceable, there must be a meeting of the minds.... The Plaintiffs were not a party to the contract and did not agree to arbitration." *General Steel Corporation* determined in relevant part that a signatory to a construction contract who redacted an arbitration provision from the contract by marking it out with a pen prior to execution did not enter into a meeting of the minds with the drafter of the contract. *Id.* at 21. *General Steel Corporation* states a fundamental tenet of contract law; i.e., that the parties must enter into a meeting of the minds in order to form an enforceable contract. It does not, however, address the issue at bar, to wit, whether a third-party beneficiary to a contract is bound by the mandatory arbitration provision of the contract.

■ The circuit court correctly determined that the Ottos could not have entered into a meeting of the minds with Olshan since the Ottos were not signatories to the contracts at issue. As such, Olshan cannot rely upon contract law to compel the Ottos to engage in arbitration. Third parties such as the Ottos, though, may seek to enforce the terms of the contract by showing that the parties to the contract intended by their agreement to benefit the third parties directly. *Sexton v. Taylor County, Kentucky,* 692 S.W.2d 808 (Ky.App.1985). Such intent need not

be expressed in the agreement itself; it may be evidenced by the terms of the agreement, the surrounding circumstances, or both. *Id.* In the matter at bar, the Ottos have produced uncontroverted documentary evidence in the form of warranty certificates that the signatories intended to benefit future third party owners of the residence.

■ The dispositive question, however, is whether the Ottos are estopped from disavowing the arbitration language while simultaneously seeking enforcement of the warranty provisions. This question must be answered in the affirmative. Nonsignatories to a contract containing an arbitration agreement may be bound to the agreement, but only if the nonsignatory receives a direct benefit from the contract. *Javitch v. First Union Securities, Inc.,* 315 F.3d 619 (6th Cir.2003), *citing Arnold v. Arnold Corp.,* 920 F.2d 1269, 1281 (6th Cir.1990). "Five theories for binding nonsignatories to arbitration agreements have been recognized: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *Id., citing Thomson–CSF v. American Arbitration Association,* 64 F.3d 773, 776 (2d Cir.1995).

In the matter at bar, the Ottos are third party direct beneficiaries of the Olshan–Schnelle and Olshan–Jansen contracts. The warranty covenants which arose from those contracts expressly provide warranty coverage "to all future owners of this home...." While the distinction between a direct and an indirect benefit is somewhat subjective, we believe that the 6th Circuit case law reasonably supports the conclusion that the Ottos' decision to seek warranty repairs arising under the Olshan–Schnelle and Olshan–Jansen contracts binds them to the arbitration provisions contained therein. As a matter of equity, they may not chose to accept the benefit of

the contracts while simultaneously avoiding the dispute resolution mechanism set out in those same contracts. Just as the contracts form the basis for the "who, what, when and where" of the warranty, they also define the "how" in relation to dispute resolution, and these elements are inextricably intertwined. As such, while the Ottos may not be bound to the agreements under contract law principles, their decision to seek warranty repairs as third party direct beneficiaries under the contracts brings with it the obligation to resolve disputes in accordance with the contracts' terms. We are not persuaded by the Ottos' assertion that the warranties are wholly separate and distinct from the Olshan–Schnelle and Olshan–Jansen contracts.

Accordingly, we reverse the order of the Campbell Circuit Court.

GUIDUGLI, Senior Judge, Concurs.

THOMPSON, Judge, Concurs in Result Only.