**D.F. BAILEY, INC., Appellant,**

v.

**GRW ENGINEERS, INC., Appellee.**

No. 2009–CA–002140–MR.

Court of Appeals of Kentucky.

June 24, 2011.

Stephen E. Neal, Mt. Sterling, KY, for appellant.

W. Craig Robertson, III, Sharon L. Gold, Lexington, KY, for appellee.

Before ACREE, DIXON and KELLER, Judges.

## OPINION

DIXON, Judge:

Appellant, D.F. Bailey, Inc. ("Bailey"), appeals from an order of the Fayette Circuit Court dismissing its action against Appellee, GRW Engineers, Inc. ("GRW"), for defamation, libel, and tortious interference with business relations. For the reasons set forth herein, we reverse and remand the matter for further proceedings.

In October 2005, the City of Liberty, Kentucky, contracted with GRW, for improvements to and expansion of the City's existing water treatment plant and to construct a new water transmission main from the plant to the water tower tank. Pursuant to a standard professional services contract, GRW was to act as engineer for the City's project. According to the affidavit of GRW's president, Ron Gilkerson, GRW's responsibilities included obtaining and evaluating the bids for the project, as well as investigating the low bidders' qualifications and references.

Following the bidding process, it was determined that Bailey was the low bidder, with Todd Johnson Contracting being the next lowest bidder by a difference of only $123.72. Thereafter, on September 8, 2008, GRW's project manager sent a letter to the City's Mayor, Steve Sweeney, stating in relevant part:

D.F. Bailey has listed several projects they had performed that were designed by Strand Engineers. We contacted Mark Askin of Strand Engineers to discuss the projects that Bailey had been awarded. Mr. Askin reported that the Water Line project in Owen County had been completed a year behind schedule, and there were many complaints and issues with completion of the work and cleanup of the construction areas. They had also received calls from suppliers indicating that their invoices had not been paid by Bailey. A Pump Station and Water Line project in Johnson County was also "way behind schedule," and the owner had begun charging liquidated damages. Bailey has responded with an attorney's notice disputing those. More recently, Bailey performed water and sewer work for the Bourbon County Fiscal Court. Mr. Askin reported that the work was performed primarily by sub-contractors.

. . . .

Based upon the references provided and the results of the references check, we are unable to recommend that the City of Liberty award Contract No. 2 to D.F. Bailey, Inc.

GRW's letter was read by Mayor Sweeney at the September 10, 2008, city council meeting, after which the council voted to accept Todd Johnson Contracting for the project. Accordingly, GRW was notified by letter dated September 18, 2008, that "[a]fter review of the final Bid Tabulations and consideration of the results of the reference investigations, the City has elected to award Contract No. 2 to the second low bidder, Todd Johnson Contracting, Inc."

Subsequently, on October 29, 2008, Mark Askin of Strand Associates, Inc. sent a letter to GRW complaining that it had made false representations and had given a false report to Mayor Sweeney regarding Bailey's references. Specifically, Askin stated:

Your letter [to Mayor Sweeny] references construction projects in Owen, Bourbon and Johnson Counties. First of all, the Owen County project was completed behind schedule as noted in the letter, however, it should also be noted that no liquidated damages were issued and we did not comment on payment to suppliers. The Bourbon County project was completed on time and the contractor used local labor to perform some of the work and we made no comment on the use of subcontractors. Finally, the Johnson County project is not closed out to date and once again we have made no comments to you regarding this project.

In September 2009, Bailey filed a complaint in the Fayette Circuit Court against GRW seeking damages for defamation, libel, and tortious interference with business relations and with a business expectancy. Bailey claimed that there had been "highly contentious issues" between it and GRW regarding a prior project in Versailles, Kentucky, and that such was the motive for GRW to intentionally provide false information to the City of Liberty, thus preventing Bailey from being awarded the Liberty contract. Instead of filing a response, GRW filed a motion to dismiss, or, in the alternative, a motion for summary judgment, asserting that the statements made by GRW in its letter to Mayor Sweeney were absolutely privileged since they were made during the course of a legislative decision-making process. By order entered November 6, 2009, the trial court granted GRW's motion and dismissed the action with prejudice. This appeal ensued.

■ Bailey argues that the trial court erred in finding that absolute privilege attached to GRW's letter. Bailey asserts that the statutes and caselaw relied upon by GRW are distinguishable and that any legislative immunity that the mayor and council members had did not extend to an independent contractor hired to perform engineering services. We agree.

■ In ruling on a motion to dismiss, the pleadings should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true. *Mims v. Western–Southern Agency, Inc.*, 226 S.W.3d 833, 835 (Ky.App.2007). Therefore, "the question is purely a matter of law." *James v. Wilson*, 95 S.W.3d 875, 884 (Ky.App.2002). Accordingly, the trial court's decision will be reviewed *de novo*. *Revenue Cabinet v. Hubbard*, 37 S.W.3d 717, 719 (Ky.2000). Further, it is true that in reviewing a motion to dismiss, the trial court is not required to make any factual findings, *Benningfield v. Pettit Environmental, Inc.*, 183 S.W.3d 567, 570 (Ky.App. 2005), and it may properly consider mat-

ters outside of the pleadings in making its decision. However, reliance on matters outside the pleadings by the court effectively converts a motion to dismiss into a motion for summary judgment. *McCray v. City of Lake Louisvilla*, 332 S.W.2d 837, 840 (Ky.1960); Kentucky Rules of Civil Procedure (CR) 12.02.

■ Legislative immunity is derived from the Speech or Debate clause found in the U.S. Constitution, Article I, Section 6. *See also Tenney v. Brandhove*, 341 U.S. 367, 372–73, 71 S.Ct. 783, 786, 95 L.Ed. 1019 (1951). The U.S. Supreme Court has determined that the clause immunizes congressmen from suits for either prospective relief or damages. *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502–503, 95 S.Ct. 1813, 1821, 44 L.Ed.2d 324 (1975). The purpose of this immunity is to insure that the legislative function may be performed independently without fear of outside interference. In other words, to preserve legislative independence, "legislators engaged 'in the sphere of legitimate legislative activity' should be protected not only from the consequences of litigation's results but also from the burden of defending themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 85, 87 S.Ct. 1425, 1428, 18 L.Ed.2d 577 (1967) (quoting *Tenney*, 341 U.S. at 376, 71 S.Ct. at 788).

Similarly, Section 43 of the Kentucky Constitution explicitly protects "any speech or debate" of members of the General Assembly that is made within the confines of the Senate or House of Representatives. Kentucky Revised Statutes (KRS) 83A.060(15), formerly KRS 84.050(5), further states: "For anything said in debate, legislative body members shall be entitled to the same immunities and protections allowed to members of the general assembly." Thus, our General As-

sembly intended to grant an absolute privilege to "legislative body members" while performing the functions of the office.

In *Jacobs v. Underwood*, 484 S.W.2d 855 (Ky.1972), our predecessor Court considered whether KRS 84.050(5) [1] protected "members of the general council" in their debate. The defendant therein was a member of the Lexington City Commission and the plaintiff was an attorney who appeared before the commission at one of its meetings. During the course of the plaintiff's presentation, the defendant essentially accused the plaintiff of lying. The plaintiff thereafter sued for defamation and the trial court granted the defendant's motion for summary judgment.

On appeal, the Court affirmed, holding that the defendant's statements were absolutely privileged. The Court noted that, at the common law, legislative bodies other than Congress and state legislatures were often granted only a qualified privilege. However, it concluded the Kentucky General Assembly intended to protect inferior legislative bodies by its enactment of KRS 84.050(5). "[T]he general assembly has effectively granted to members of city legislative bodies an absolute privilege under which they cannot be liable for statements made during a debate before a formal meeting of the assembly." *Jacobs v. Underwood*, 484 S.W.2d at 857. Indeed, through the enactment of KRS 84.050(5), and subsequently KRS 83A.060(15), city council members and city commission members in Kentucky are afforded the same immunities and protections afforded members of the General Assembly.

Several years later, in *Gray v. Central Bank & Trust Co.*, 562 S.W.2d 656, 658 (Ky.App.1978), this Court considered the question of what constitutes a "city legisla-

---

1. KRS 84.050 was applicable to cities of the second class and has since been repealed.

KRS 83A.060, which contains virtually identical language, now applies to all cities.

tive bod[y]." Therein, Garvice Kincaid was a member of the Lexington–Fayette Urban County Airport Board as well as the President and Director of Central Bank. Gray Construction Company was one of a number of companies bidding on the construction of a new airport terminal. Kincaid initiated an investigation of Gray and, at a meeting to award the bid, expressed reservations about Gray's qualifications. Gray Construction was not awarded the bid, and when it learned of Kincaid's investigation and statements, sued Kincaid and Central Bank for defamation and interference with a prospective business relationship.

On appeal, a panel of this Court concluded that because the airport board was established pursuant to KRS 183.132, which allows cities and counties to jointly establish such, it was a legislative body with certain legislative powers. Thus, under the authority of *Jacobs*, its members, including Kincaid, were granted absolute immunity for statements made "while acting within the scope of the duties imposed upon them by statute." *Gray*, at 658.

In the instant case, GRW does not particularly dispute Bailey's claim that the statements contained in the letter to Mayor Sweeny were false. Rather, it argues that in accordance with the *Jacobs* and *Gray* decisions, it is entitled to the same absolute immunity that would be afforded the city council members because it was acting in a "legislative" decision-making capacity when it sent the letter to Mayor Sweeney. It is GRW's position that parties supplying information to governmental entities during a decision-making process, such as the case herein, are absolutely protected. GRW asserts that the *Gray* decision is particularly instructive because the defamatory statements made therein, which were deemed to be absolutely privileged, were made by a representative of a bank. We disagree because we conclude that GRW has misconstrued the holding of *Gray*.

With respect to the statements made by Kincaid, the *Gray* Court specifically stated:

It is also the opinion of this court that Kincaid, although simultaneously protecting the interests of Central Bank, *was acting within the scope of his duties as a member of the air board*, in as much as he was seeking to insure that the contract was awarded to the lowest and best bidder, and thereby enjoyed an absolute privilege from the liability for his remarks. This privilege extends to protect both the estate of Kincaid and Central Bank from liability for either cause of action. *Spears v. Burchett*, Ky., 289 S.W.2d 731 (1956); *Chesapeake & O.R. Company v. Williams' Adm'x*, 300 Ky. 850, 190 S.W.2d 549 (1937).

*Gray*, at 658 (emphasis added). To be sure, the *Gray* Court premised its conclusion that Kincaid's statements were privileged solely upon his status as a *member* of a legislative body.

We are of the opinion that the immunity afforded by our statutes and caselaw is not only limited to actual members of a legislative body but also only to statements made while "acting within the scope of the duties imposed upon them by statute." *Id.* Here, had Bailey filed suit against the mayor or city council members, immunity would have likely barred its claims. However, GRW engineers are clearly not members of the Liberty City Council. Further, GRW had no duties imposed upon it by statute. Rather, any duties imposed upon GRW engineers were by virtue of its contract to provide professional services to the City. We believe that extending legislative immunity to an independent contractor hired to perform services to a legislative body would lead to untenable results

and create a slippery slope which the legislature surely did not intend.

We likewise find no merit in GRW's argument that the statements in its letter are comparable to statements made by witnesses in judicial proceedings, thus entitling it to judicial immunity. Unlike the fact scenario in *Rogers v. Luttrell,* 144 S.W.3d 841 (Ky.App.2004), relied upon by GRW herein, GRW was not a court-appointed witness, and the letter was not provided during the pendency of ongoing litigation. No GRW engineer was a witness at the city council meeting, and, in fact, no representative from GRW was even present at the time the letter was read to council members.

For the reasons set forth herein, we conclude that absolute privilege did not attach to the statements contained in the letter written by GRW to Mayor Sweeney. As such, we reverse the order of the Fayette Circuit Court dismissing the case herein. This matter is remanded for further proceedings consistent with this opinion.

ALL CONCUR.