RENDERED:  JANUARY 30, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0482-MR

STEPTOE & JOHNSON PLLC                                            APPELLANT

v.
APPEAL FROM FRANKLIN CIRCUIT COURT
HONORABLE THOMAS D. WINGATE, JUDGE
ACTION NO. 23-CI-00921

DAVID ERIC LYCAN                                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, KAREM, AND LAMBERT, JUDGES.

ACREE, JUDGE:  Appellant Steptoe and Johnson, PLLC, appeals the Franklin

Circuit Court's order denying its motion to dismiss and staying arbitration while

the court adjudicates a fee dispute between the parties.  Finding no error, we

affirm.

## BACKGROUND

Five agreements, described below, are at issue in this case.

### 1.  2007 HDM Contract

In 2007, the Commonwealth contracted with the law firm Hurt Deckard & May ("HDM")—where Lycan was employed at the time—to pursue civil action against entities offering illegal online gambling in Kentucky ("Gambling Case").  This contract, the "2007 HDM Contract," provided that the Commonwealth agreed to pay a 25 percent contingency fee of any recovery, subject to the review and approval of the Franklin Circuit Court.  HDM and Lycan provided legal services pursuant to this contract for several years.

### 2.  2009 Affiliation Agreement

Roughly two years later, in June 2009, Lycan became an employee of Steptoe & Johnson, PLLC ("Steptoe") under an Affiliation Agreement between his then law firm Bowling, Johnson & Lycan, PLLC ("BJL").  This agreement exempted the Gambling Case and provided that Steptoe was not entitled to any portion of the fees recovered by Lycan in the Gambling Case, which he continued to work on outside the scope of his employment with Steptoe.

### 3.  2010 Agreement

Finding the Gambling Case exemption to be unworkable since it impacted Lycan's billable hours requirement at Steptoe, Lycan and Steptoe amended the Affiliation Agreement on September 13, 2010 ("2010 Agreement"). Noting "the case ha[d] not concluded as quickly as expected," this amended

arrangement "revise[d the parties'] understanding as to the further handling of the case." (Appellant's Br. App. 3). The 2010 Agreement provided as follows:

> Furthermore, if any recovery is made in the case, the fees and expenses will be paid as follows:
>
> - From any recovery made, BJL and S&J will each recoup their out-of-pocket costs and expenses in the case before fees are paid.
>
> - For any resolution of the case or part thereof made in the calendar year 2010, S&J will be entitled to receive 10% of the portion of the attorney fees received by BJL in 2010.
>
> - For any resolution of the case or part thereof made in 2011, S&J will be entitled to receive 15% of the portion of the attorney fees received by BJL in 2011.
>
> - For any resolution of the case or part thereof made in 2012, S&J will be entitled to receive 20% of the portion of the attorney fees received by BJL in 2012.
>
> - The same 5% increase per year will be followed for any resolution in subsequent years with a cap of 35% of the portion of the attorney fees received by BJL paid to S&J.

## 4. General Operating Agreement

The members of Steptoe are parties to a general partnership Operating Agreement, to which Lycan was subject during his employment with Steptoe. The Operating Agreement contains a broad arbitration clause, stating in relevant part:

It is agreed that any controversy, dispute or claim arising . . . (b) between the firm and any member or group of members, relating to any firm matter or matters, or anything concerning the firm or firm affairs, which cannot be agreed upon . . . will not be litigated but will be resolved by final and binding arbitration, which shall be the exclusive and only remedy, except to the extent that a proceeding in court may be required to enforce the final and binding award of the arbitrator. The parties further agree that any collateral issue such as the arbitrability of a particular dispute, the enforceability of this arbitration provision, or any other procedural or substantive matter concerning arbitration, shall itself be submitted to an arbitrator for resolution . . . . The AAA shall administer all such proceedings. The locale for any arbitration under this section is designated to be Bridgeport, West Virginia.

(Appellant's Br. App. 6).

### 5. Practice Transition Agreement

On November 14, 2014, the parties executed a Practice Transition Agreement ("PTA") that effectively terminated Lycan's employment with Steptoe.[1]  The PTA contained various terms to facilitate Lycan's departure from the firm, including agreed-upon communications regarding the departure, designation of equipment and office space, and assignment of matters.  The PTA contains an arbitration clause:

### 12. Governing Law; Resolution of Disputes

---

[1] While the circumstances giving rise to the separation are disputed and not at issue in this appeal, both parties agree that Lycan's successful political practice was at odds with Steptoe's successful lobbying practice.

This Agreement shall be governed by the laws of the Commonwealth of Kentucky, without giving effect to the Conflict of Laws rules thereof. Any controversy or claim arising out of or relating to this Agreement, or the transition of the political law practice, shall be settled by confidential binding arbitration administered by the American Arbitration Association under its Employment Arbitration Rules and Mediation Procedures and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The arbitration proceeding shall take place in Lexington, Kentucky and the costs of same shall be borne equally by the Parties.

(Appellant's Br. App. 4). Notably, the PTA contains an additional section,

specifically carving out the Gambling Case:

## 8. Gambling Case

The Parties agree to reserve any and all issues regarding the existing agreement between them concerning sharing the fee from the litigation commonly referred to as "the Gambling Case." The parties acknowledge issues regarding government contracting, conflicts of interest, contingency fees, fee sharing, court approval of the fees, etc. The parties make no warranties or representations as to these issues or this agreement. The parties agree to use reasonable efforts to resolve these issues amicably and to their mutual satisfaction, failing which *the parties shall submit their fee requests to the court* pursuant to the contract with the Commonwealth.

(*Id.*) (emphasis added). Further, Section 13 of the PTA states the PTA constitutes

the entire agreement between Lycan and Steptoe:

-5-

### 13. Entire Agreement

> This Agreement represents the entire agreement between the Parties on the subjects addressed in it, and it supersedes any and all prior agreements or discussions between the Parties on said subjects, except where specifically stated otherwise. There are no additional or contrary representations or agreements by or between the Parties which do not appear in this Agreement.

(*Id.*) After executing this agreement and departing from Steptoe, Lycan continued to render legal services for the Commonwealth in connection with the Gambling Case. In June 2021, the trial court in the Gambling Case approved attorney fees from the Commonwealth's recovery.

After learning of Lycan's award, Steptoe filed a demand for a share of the contingency fee by initiating an arbitration proceeding in West Virginia, which Steptoe claims it did pursuant to the Operating Agreement. (Appellant's Br. at 6). The share demanded by Steptoe was approximately $4.7 million, or 35 percent of the fees Lycan received, which Steptoe calculated based on the 2010 Agreement.

Lycan moved the Franklin Circuit Court, the trial court in the Gambling Case, to adjudicate the fee dispute between him and Steptoe. At Lycan's request, the Circuit Court joined Steptoe as a party to decide the issue. On September 8, 2022, the Circuit Court determined it had jurisdiction over Steptoe and the attorney fee dispute, and enjoined the West Virginia arbitration. However, this Court voided that order on an appeal from Steptoe due to neither party having

filed a new complaint nor issuing a summons. *See Steptoe & Johnson, PLLC v. Lycan*, No. 2022-CA-1181-MR, 2023 WL 4670966 (Ky. App. Jul. 21, 2023). After this Court determined the Circuit Court did not have jurisdiction in such a scenario, Lycan filed a separate lawsuit seeking to enjoin the arbitration.

Steptoe filed a motion to dismiss, arguing that the issue of arbitrability is to be decided by an arbitrator and that the Circuit Court lacked subject matter jurisdiction over the dispute. This motion was denied. Specifically, the court found the parties agreed the Franklin Circuit Court would decide all disputes regarding attorney fees and it did not lack subject matter jurisdiction to do so. It is from this order Steptoe now appeals.

## ANALYSIS

When a trial court reviews a motion to dismiss under CR[2] 12.02, "the pleadings should be liberally construed in a light most favorable to the plaintiff and all allegations taken in the complaint to be true." *Gall v. Scroggy*, 725 S.W.2d 867, 869 (Ky. App. 1987) (citing *Ewell v. Central City*, 340 S.W.2d 479, 480 (Ky. 1960)). The trial court is not required to make any factual findings and may consider matters outside of the pleadings in making its decision. *D.F. Bailey, Inc. v. GRW Engineers, Inc.*, 350 S.W.3d 818 (Ky. App. 2011). However, reliance on matters outside the pleadings by the court effectively converts a motion to dismiss

---

[2] Kentucky Rules of Civil Procedure.

into a motion for summary judgment.  *McCray v. City of Lake Louisvilla*, 332 S.W.2d 837, 840 (Ky. 1960); CR 12.02.

On appeal, we review *de novo* the trial court's application of rules governing the validity of an arbitration contract, but the court's factual findings, if any, will not be disturbed unless clearly erroneous.  *PSC Industries, Inc. v. Toyota Boshoku America, Inc.*, 649 S.W.3d 288, 290 (Ky. App. 2022).

Steptoe contends that pursuant to *Ally Align Health, Inc. v. Signature Advantage, LLC*, and under the clear language of the Operating Agreement, the arbitrability decision should have been delegated to the arbitrator, not the trial court.  574 S.W.3d 753, 756 (Ky. 2019).

While the Operating Agreement does indeed identify arbitration as the method of dispute resolution between partners and the firm, and while *Ally Align* provides that "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by clear and unmistakable evidence[,]" *id.*, this contention rests upon Steptoe's misplaced reliance on the Operating Agreement as the controlling contract.

As we have previously noted, the determination of whether there is an agreement to arbitrate is a threshold issue that must first be decided by the trial court.  *General Steel Corp. v. Collins*, 196 S.W.3d 18, 20 (Ky. App. 2006).  "The court—not an arbitrator—must decide whether the parties have agreed to arbitrate

-8-

based on rudimentary principles governing contract law." *Id.* It is well established that the party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate. *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 590 (Ky. 2012).

If the court finds no agreement to arbitrate, it is required to enjoin arbitration pursuant to KRS[3] 417.060:

> On application of a party showing an agreement [to arbitrate], and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised. The court shall order arbitration if found for the moving party; otherwise, the application shall be denied.

KRS 417.060. We identified the same principle in Steptoe's first appeal to this court: "[W]e believe Lycan's challenge to the existence of an arbitration agreement required him to invoke the circuit court's jurisdiction by commencing an action and issuing summons. Or, upon receiving notice of Lycan's objection to arbitration, Steptoe could have commenced its own action in circuit court." *Steptoe*, 2023 WL 4670966, at *3.

The Franklin Circuit Court determined, upon review of the PTA, that it was the proper forum to bring forth fee disputes arising from the Gambling Case

---

[3] Kentucky Revised Statutes.

because Section 8 of the PTA specifically designated that "the parties shall submit their fee requests to the court pursuant to the contact with the Commonwealth." (Appellant's Br. App. 1). Because the court determined both parties freely entered into the contact and bound themselves to the contract's terms, Steptoe had the burden of proving that adjudication would be unfair or unreasonable. *Kentucky Farm Bureau Mut. Ins. Companies v. Henshaw*, 95 S.W.3d 866, 867 (Ky. 2003). Steptoe did not and has not done so.

Instead, its argument appears to be that the broad arbitration clause in the general Operating Agreement—which applied to all partners at the firm, and purportedly applied broadly to all firm matters—applies here. We disagree. The most recent agreement between Lycan and Steptoe was entered into upon Lycan's departure from the firm in 2014, well after the Operating Agreement became effective. The PTA specifically carved out the Gambling Case, reserved the matter, and stated that "the parties agree to use reasonable efforts to resolve these issues amicably and to their mutual satisfaction, failing which the parties shall submit their fee requests to the court pursuant to the contract with the Commonwealth." (Appellant's Br. App. 4). Our review of the record indicates a private demand was made by Steptoe, which Lycan denied. (Record (R.) at 39). Failing this reasonable effort to resolve the issue amicably, Steptoe's remaining recourse was to submit its fee request to the Franklin Circuit Court.

Steptoe largely ignores this provision, turning its attention instead to the broad arbitration clause of the Operating Agreement. While this logic would likely be permissible for any other matter for which Steptoe demands a share of attorney fees, the fact that the parties specifically agreed, in the PTA, to adjudicate the Gambling Case renders this argument moot. To ignore this provision and rely solely upon the firm's Operating Agreement would yield absurd results and circumvent the parties' intent with respect to this particular Gambling Case.

To sum up, Steptoe's arbitrability argument misses the mark since the threshold question—identified in all authority to which it cites, including *Ally Align*—of whether an agreement to arbitrate even *exists* between the parties was determined in the negative by the trial court. The issue of arbitrability was not reached because Steptoe was unable to meet its initial burden of demonstrating the existence of an agreement to arbitrate. *Ping*, 376 S.W.3d at 590. The caselaw Steptoe relies on was not "ignored" by the trial court; it was simply inapplicable to the case at bar since the trial court found there was no agreement to arbitrate the sharing of fees earned in the Gambling Case due to the parties' PTA superseding any prior agreements with respect to the Gambling Case.

Both parties freely entered into the PTA knowing the plain language of Section 8 places all fee disputes within the jurisdiction of "the court pursuant to the contract with the Commonwealth," which is Franklin Circuit Court.

(Appellant's Br. App. 4; R. at 264). Whether there was an agreement to arbitrate this specific issue was properly before the Franklin Circuit Court, and the court did not err in finding that the PTA's plain language controls.

Having found the Franklin Circuit Court is the proper forum, we need not address Steptoe's argument that the circuit court lacked subject matter jurisdiction. Accordingly, the order of the Franklin Circuit Court denying Steptoe's motion to dismiss is affirmed.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Jeffrey K. Phillips
Lexington, Kentucky

BRIEF FOR APPELLEE:

Stephanie Tew Campbell
Lexington, Kentucky